[No. 17509. Department Two. February 7, 1923.]

# THE STATE OF WASHINGTON, *Respondent*, v. IRVING WHITEHOUSE, *Appellant*.[1]

FALSE PRETENSES (1)—NATURE OF OFFENSE—"DEVICE"—STATUTES. A fraudulent brokerage business is a "device" within the meaning of Rem. Comp. Stat., § 2601, making it larceny for any person, with intent to defraud, to obtain "by device" title or possession of the property of another.

CRIMINAL LAW (54)—FORMER JEOPARDY—ACQUITTAL—IDENTITY OF ISSUES. An acquittal of obtaining money of one person by the "device" of a fraudulent brokerage business, is not a bar to a subsequent prosecution for obtaining money of another person at a different time by the same device, since there is no identity of offenses, and the evidence to support one is inadmissible to support the other.

CRIMINAL LAW (452)—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In a prosecution for obtaining money by the device of a fraudulent brokerage business, it is not prejudicial error to give an unnecessary instruction defining the duties of stock brokers, where the device was not essentially different from the ordinary practice in pledging the stock.

FALSE PRETENSES (18)—TRIAL—INSTRUCTIONS . In a prosecution for obtaining money by the device of a fraudulent brokerage business, it is proper to instruct that the business might be fraudulent although the defendant properly accounted in some of the transactions; and it is not erroneous as discrediting the testimony of the defendant.

SAME (16)—WEIGHT AND SUFFICIENCY OF EVIDENCE. A conviction of obtaining money by the device of a fraudulent brokerage business is sustained by proof that stock delivered for sale was immediately pledged for the use of defendant and the owner was never able to recover the stock or its price.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 5, 1922, upon a trial and conviction of grand larceny. Affirmed.

*Allen, Winston & Allen,* for appellant.

*William C. Meyer, C. E. Collier,* and *Louis F. Bunge,* for respondent.

[1]Reported in 212 Pac. 1043.

FULLERTON, J.—The appellant was charged with the crime of grand larceny, upon an information filed in the superior court of Spokane county, the material part of which is as follows:

"That the said defendant, Irving Whitehouse, in the County of Spokane, State of Washington, on or about the 6th day of July, 1921, then and there being, did, then and there, wilfully, unlawfully and feloniously, conduct and maintain a fraudulent device for the purpose of obtaining money and property, and defrauding the public generally of said money and property, by holding himself out, while hopelessly insolvent, as being able, ready and willing, to perform the usual functions of a stock broker, with intent not to fulfill his contracts, but to appropriate the said money and property to his own use, the use of the Irving Whitehouse Company, and others, and by color and aid of said false and fraudulent device, did then and there, wilfully, unlawfully and feloniously obtain from Dan Boynan, the owner thereof, ten (10) shares of Chicago, Milwaukee & Saint Paul common stock, and twenty (20) shares of Chicago, Milwaukee & Saint Paul preferred stock of the value of eleven hundred and eighty ($1,180) dollars, by then and there pretending to be doing a general stock brokerage business, by and through the agency of Irving Whitehouse Company, a corporation, and pretending that he would sell the said stock for the said Dan Boynan for the sum of eleven hundred and eighty ($1,180) dollars, but in truth and in fact obtained said stock from the said Dan Boynan, with the intent to, and he did then and there, appropriate the same to his own use, the use of the Irving Whitehouse Company, a corporation, and others, with intent then and there to deprive and defraud the said Dan Boynan, the owner thereof."

Appellant demurred to the information upon the grounds that it did not substantially conform to the requirements of the code; that more than one crime was charged therein; and that the facts charged did not constitute a crime. The demurrer was overruled,

whereupon the appellant pleaded not guilty to the information. With the plea of not guilty the appellant filed an additional plea in writing, entitled a plea of estoppel and prior adjudication; the substance of which will be stated further on. To this plea the state interposed a demurrer, which the trial court sustained. The cause then went to trial upon the plea of not guilty, and resulted in a verdict and judgment of conviction. From the judgment so entered, this appeal is prosecuted.

The first error assigned is based on the order of the court overruling the demurrer to the complaint. The information is founded on §2601, Rem. Comp. Stat. This section, in substance, provides that any person who, with intent to defraud an owner of property, shall obtain by device title to or possession of such property, steals the same and is guilty of larceny. The information, with sufficient clearness, charges the defendant with conducting and maintaining a fraudulent brokerage business for the purposes prohibited by the statute, and that by means thereof did obtain and convert to his own use certain property of one Dan Boynan, with intent to deprive and defraud him of such property. Seemingly, the only question that could be said to be debatable is the question whether the device described in the information, by which the property was obtained, is the device contemplated by the statute. On this question we have little doubt. The statute itself does not define the term "device," consequently we are left to determine its meaning from the context of the section of the statute in which it is used. The statute speaks of crime—of the wrongful deprivation of one of his property—and the word "device" must be given that meaning which comports with this idea. One of its accepted meanings is a "scheme to deceive," and obviously a false and fraudulent brokerage business

can be such a scheme. In our opinion, therefore, it states facts sufficient to constitute a crime.

The second contention is that the court erred in sustaining the demurrer to the defendant's plea of former acquittal, and in refusing later to permit the facts pleaded therein to be shown under the plea of not guilty. In substance, the plea in question set forth that the appellant had been accused, by an information filed in the superior court of Spokane county, of obtaining the money of one Mrs. S. W. Mowers by the same device with which he was charged in the present information of obtaining the property of prosecuting witness Boynan; that he entered a plea of not guilty to the charge, was tried for the alleged offense before a jury, and that the trial resulted in a verdict and judgment of acquittal. More specifically, therefore, the contention is that if a person maintains and operates a device for the felonious taking of the property of any one whom he may deceive, and thereby at one time takes the property of A, and at another time takes the property of B, an acquittal on a charge of feloniously taking the property of A is a bar to a conviction for the felonious taking of the property of B.

It would seem that to state the proposition is to refute it. It would be to hold that an acquittal at one time for the felonious taking would constitute a license to operate the device for all time in the future. This, manifestly, the courts will not do, unless there is no other alternative.

The courts, it is true, are not in accord as to the particular circumstances that will constitute an identity of offenses, but the most favored rule, and we think the better one, is that there must be an identity of both law and fact. In other words, if the evidence which is necessary to support the second information was admissible under the former, was related to the same crime,

and was sufficient, if believed by the jury, to have warranted a conviction for that crime, the offenses are identical, otherwise not. 16 C. J. 265, and the cases there cited.

Among our own cases there is, perhaps, none that meet the facts of the present case, yet there are a number that are more or less analogous in principle. In *State v. Dye*, 81 Wash. 388, 142 Pac. 873, it appeared that the defendant was informed against for carnally knowing and abusing a female child under the age of fifteen years. He was acquitted of the offense on a trial upon the merits, and subsequently he was informed against for carnally knowing and abusing the child by force, the act being the same in both informations. It was held that the acquittal in the first information was a bar to a conviction on the second, as there was no difference in legal effect between the charges, and the same evidence would support either. In the course of the opinion, however, we said, quoting from Wharton's Criminal Law:

" 'Test as to whether two indictments are for the same offense is the fact whether evidence necessary to support the latter indictment would have sustained a conviction under the former indictment. Testimony to sustain the second charge not being admissible to sustain the first charge, there is no former jeopardy.' "

So in *State v. Robinson*, 12 Wash. 491, 41 Pac. 884, the facts were that one George Schultz and one Frederick Smith were shot and killed while traveling upon a public highway. One Robinson was charged with murder in the first degree for killing Schultz. On a trial he was acquitted by the verdict of the jury. Thereafter, he was informed against for killing Smith. A plea of former jeopardy was interposed, which the trial judge overruled. On the appeal this was assigned as

error, and this court, passing upon the question, used this language:

"Was the killing of each of these men a distinct crime? They were killed in a single affray, and the connection of the appellant was substantially the same in his relations to such affray as it related to each of such men. If the result of the meeting at which the two were killed had been the death of only one of them, a prosecution for murder could have been founded upon his death, and under the circumstances of this case this would have been true whether the one so killed had been Schultz or Smith; and there can be no good reason why that which would have warranted a prosecution for murder should lose force by reason of the fact that another circumstance, which in itself would warrant such a prosecution, occurred at the same time and place. If the prosecution had been founded upon the killing of the two and the case had gone to trial upon a plea of not guilty, proof of the killing of either of them would have warranted a conviction. It follows that the killing of each was, so far as the homicide was concerned, a distinct transaction.

"The taking of a human life with certain intent constitutes murder, and neither law nor public policy will justify a holding that each life is of less value when taken with another than it would be if taken alone. If a person without justification intends to kill A and does so, he will be guilty of a crime; if he intends to kill B, he will be guilty of another and a different crime; and the fact that he entertains the intent to kill both and carries such intent into effect at the same time and place, should not be held to make of that which would otherwise be a foundation for two distinct prosecutions a foundation for only one. In our opinion, the undisputed proofs, when interpreted in the light of the law which it was the duty of the court to find, clearly showed that the appellant had never been on trial for the killing of Smith."

See, also, *State v. Reiff,* 14 Wash. 664, 45 Pac. 318; *State v. Campbell,* 40 Wash. 480, 82 Pac. 752; *State v. Elliott,* 69 Wash. 62, 124 Pac. 212; *Patterson v. State,*

96 Ohio St. 90, 117 N. E. 169; *Gavieres v. United States,*
220 U. S. 338; *Ebeling v. Morgan,* 237 U. S. 625.

Tested by these rules it is plain that the crimes with
which the appellant was accused were not the same in
fact, and evidence showing that the appellant was
guilty of feloniously obtaining the money of Mrs.
Mowers would not convict him of feloniously obtaining
the property of Boynan, even though it be shown that
the same device was used in each instance. We there-
fore find no error in the orders of the court sustaining
a demurrer to the plea of former acquittal, and in re-
fusing subsequently to admit evidence of the matters
set forth in the plea.

Error is assigned on a number of instructions given
by the court. The greater number of these assign-
ments are founded·upon a theory of the law contrary
to what we have concluded it to be in the last proposi-
tion discussed, or are covered by the instructions given
by the court, and need no separate consideration.

The court, however, gave the following instructions:

"5. In order to determine whether the defendant,
through the agency of the Irving Whitehouse Com-
pany, was operating a general brokerage business, as
a fraudulent device for obtaining the stock from Dan
Boynan, it will be necessary for you to consider all of
the evidence in the case with reference to the stock
brokerage transactions conducted by the Irving White-
house Company, and in order that you may determine
whether this was a legitimate stock brokerage business,
or a fraudulent device, I instruct you that in the con-
duct of a general stock brokerage business it is the
duty of the broker:

"(1) To buy for his customers stocks or securities
ordered by them and to advance all moneys required
for the purchase, beyond the margin furnished by the
customers.

"(2) To deliver such stocks or securities to the
customer upon the receipt of the full payment therefor,
together with commissions.

"(3) In marginal purchases it is the right of the broker to pledge the stock or securities ordered by the customer, subject to the duty of the broker to have the stock or securities under his control, ready for delivery to the customer upon reasonable notice, and upon full payment.

"(4) In outright purchases of stock or securities, that is when the customer pays in full for such stocks or securities, it is the duty of the broker to buy the same and immediately deliver the same to the customer. In such case the broker has no right to use or pledge the same for his own purpose.

"(5) In case a customer delivers stocks or securities to the broker to be sold, it is the broker's duty to sell the same whenever they reach the price fixed by the customer, and when sold, to deliver the price received at once to the customer.

"(6) In case a customer delivers stocks or securities to the broker to be sold at a stated price, the broker has the right as long as the price named has not been reached, to pledge the stock or securities, provided that he always has in his possession or under his control an equal number of shares of the same kind to return to the customer upon demand, and if all of these duties and rights are observed by the broker, then his is a legitimate brokerage business; but if he fails to observe any of these duties, then he violates his duty as a stock-broker.

"6. If, therefore, you find from the evidence in the case, and beyond a reasonable doubt, that the defendant, acting through the agency of the Irving Whitehouse Company, and while hopelessly insolvent, was conducting and operating a general brokerage business as a fraudulent device for the purpose of obtaining money and property with the intent not to fulfill the duties of a stockbroker, as I have just named them to you, but with the intent of defrauding customers and the public generally of such money and property; and if you further find that on or about July 6, 1921, the defendant through said company obtained from Dan Boynan ten shares of Chicago, Milwaukee & St. Paul common stock and twenty shares of Chicago, Milwau-

kee & St. Paul preferred stock, under the promise and
pretense that he would sell the same for Boynan, when-
ever said stock should reach the price named by Boy-
nan, but that the defendant obtained the same actually
with the intent to appropriate the same to his own use,
and that he did so appropriate the same to his own use,
with the intent to defraud and deprive said Boy-
nan thereof, then the defendant would be guilty; but
on the other hand, if the state has failed to show by
the evidence, and beyond a reasonable doubt that the
defendant, acting through said company, operated and
conducted a general stock brokerage business as a
fraudulent device for the purpose of obtaining money
and property from others, or that the defendant,
through said company, obtained said stocks from said
Boynan, with said fraudulent intent, and under said
fraudulent pretense, then the defendant would not be
guilty.

"7.   Further, in connection with the requirement
that the state must show that the defendant, through
the Irving Whitehouse Company, was conducting said
business as a fraudulent device, I instruct that it is not
necessary that the state show that each and every busi-
ness transaction conducted by the Irving Whitehouse
Company was tainted with fraud; but if the state has
shown by the evidence in this case, and beyond all rea-
sonable doubt that the defendant, through said com-
pany, was conducting said brokerage business as a
fraudulent device for obtaining money from customers
dealing with said company, and in this manner did ob-
tain the stocks from Dan Boynan, then, even if you
should find it to be a fact that other transactions were
legitimately conducted by said company, the defendant
would nevertheless be guilty."

It is objected to the instruction numbered five, that
while it is a correct statement of the law applicable to
the implied contract when a person leaves stock with
a broker for sale, it was not so in the present instance,
since there was here a special written contract defining
the rights of the parties. But, as we read the contract,
it did not change the general rule. A right was given

to "pledge as collateral" the stock delivered, "to secure this or any other outstanding contract," and it was provided that "all securities carried in your account or deposited to secure the same, may be loaned by us, or may be pledged by us either separately, or together with other securities, either for the sum due thereon or a greater sum, all without notice to you," yet, as we read the evidence, none of these contingencies arose. It was not shown that the depositor of the stock had a general account with the appellant, or that he deposited them in pledge of any account; nor was it shown that the stock was lost by reason of any such pledge; the evidence, on the contrary, shows a direct appropriation of the stock to the appellant's use. It was, therefore, the appellant's duty to sell the stock as directed, whenever it reached the price the depositor had fixed upon it, and when so sold to deliver the price received to the customer, and it was not error to so tell the jury. The court may have gone beyond the necessities of the particular case in instructing upon the duties of stock-brokers generally, but the instruction was not so far an abstract proposition of law as to render the giving of it error.

Against the seventh instruction it is urged that it is erroneous in two respects: "First, in discrediting the testimony on behalf of the defendant appellant and advising the jury that they had a right to disregard the same, and, secondly, in not stating in the alternative the effect which the jury could give to the evidence introduced by the defendant." It is further said that the error in the instruction might have been cured if the court had added thereto the following words: "But if, on the other hand, even though Dan Boynan never received either his stock or his money back, you should find from other transactions actually carried through by the defendant, that he was in fact operating a legiti-

mate business and not a device to defraud, then you should find him not guilty," but that, in the absence of this qualification, it is erroneous. We cannot, however, think the objection well founded. Elsewhere in the instructions the court made it clear to the jury, notably in instruction No. 6, quoted, that one of the facts necessary for them to find in order to find the defendant guilty was that he conducted the brokerage business as a fraudulent device for the purpose of feloniously obtaining the property of others. The instruction here complained of was, moreover, but a qualification of the rule expressed in the prior instruction and could not have been understood by the jury as a separate instruction embodying the entire law of the case. The claim that it discredits the appellant's testimony and advises the jury that they had the right to disregard it, we think is also without foundation. Clearly, if a person conducts a brokerage business for the purpose of defrauding others, it would not render his act lawful if he did on certain occasions properly account for money and property intrusted to him as a broker.

There was a motion for a directed verdict at the close of the evidence which questioned the sufficiency of the evidence to sustain a conviction. It is not contended on this branch of the argument that the evidence introduced by the state was not sufficient to sustain a finding that the appellant maintained a fraudulent device for the purpose of defrauding others of their property, but the contention is that there was a failure to show that prosecuting witness Boynan was thereby defrauded. But we have no hesitancy in saying that the evidence was sufficiently clear upon this point. His stock was pledged by the appellant immediately after its receipt for the uses of the appellant, and Boynan was never thereafter able either to recover it or get from the appellant its selling price. When and how

the stock was finally disposed of was not shown, it is true, but this was not a necessary part of the state's case. It was sufficient to show that the appellant appropriated it to his own uses, without accounting to Boynan for it.

In our opinion, there is no reversible error in the record, and the judgment will stand affirmed.

MAIN, C. J., PARKER, HOLCOMB, and TOLMAN, JJ., concur.