Citizens Savings and Loan Association, Plaintiff, v. Conrad C. Fischer, Ella M. Fischer, Kelly-Louvier Company, a Corporation, and Ehret Plumbing and Heating Company, Inc., Defendants.

Conrad C. Fischer and Ella M. Fischer, Counter-Plaintiffs-Appellees, v. Citizens Savings and Loan Association, Kelly-Louvier Company, D. J. Kelly, et al., and Ehret Plumbing and Heating Company, Inc., Counter-Defendants-Appellants.

Gen. No. 65–25.

Fifth District.

February 4, 1966.

James W. McRoberts, of East St. Louis (James W. McRoberts, Jr., of counsel), for counter-defendant-appellant, Donald J. Kelly.

C. E. Heiligenstein, of Belleville, for counter-plaintiffs-appellees, Conrad C. Fischer and Ella M. Fischer.

EBERSPACHER, J.

This action began as a suit by Citizens Savings and Loan Association against holders of title to real estate to foreclose a mortgage. The defendants in that suit, Conrad C. Fischer and Ella M. Fischer, filed a counterclaim against the corporation which sold them the mortgaged real estate, and also four of the corporation's officers and employees, including Appellant Kelly, alleging that the counterdefendants had represented, that the title to the real estate involved was clear; that a guaranteed title insurance policy was ordered and forthcoming; and that the statements, promises, representations, and execution of the warranty deed to Fischers, by Kelly on behalf of the corporation, were fraudulent and false; and by an amendment to the counterclaim alleged that "the statements, promises, representations, and execution" of the warranty deed to Fischers were "in the alternative, fraudulent, false, tortious or negligently made" by reason of the fact that there was in fact a mortgage construction loan on the premises, of which Fischers had

no knowledge. Fischers prayed that any losses sustained by them, be taxed against the defendants in the counterclaim; subsequently they paid Citizens $9,000 to preclude the foreclosure, and the foreclosure proceeding was dismissed.

The court, sitting without a jury, after the evidence was taken, entered judgment for all the counterdefendants except Kelly, and entered an order containing findings of fact, and conclusions of law and entered judgment against Kelly on behalf of Fischers for $9,000, and from which Kelly, his post trial motion having been denied, files this appeal.

The evidence shows that Conrad C. Fischer, the counter-plaintiff-appellee was 73 years old, retired and owned a home located at 707 West Cleveland Street in Belleville, Illinois. In February of 1961, Fischer and his wife were contacted by Wilmer Feurer, who was a salesman employed by Kelly-Louvier Company, a corporation engaged in the buying and selling of homes and in the construction and building of new homes and subdivisions. The corporation owned a new home at 605 St. Mary's Drive valued at $17,000; Fischers valued their home on Cleveland Street at $23,000. A contract, negotiated by Feurer, was entered into between the Fischers and Kelly-Louvier Company, wherein the Fischers would trade in their home at 707 West Cleveland Street and in exchange therefor would receive the house located at 605 St. Mary's Drive, plus $6,000 in cash. This contract was accepted by the company on March 2, 1961 and was signed by Earl L. Louvier, Secy.-Treas., on behalf of the company. It called for delivery of warranty deeds conveying merchantable title free and clear of all encumbrances. The closing statement, signed by Fischers and Louvier for the company, was dated March 17, 1961; it was essentially a recapitulation of the transaction and showed no credit for any mortgage. The warranty deed from the company to Fischers was dated March 22, 1961

318

and was signed by D. J. Kelly as president of Kelly-Louvier Company and attested by Earl L. Louvier as secretary; it was recorded May 9, 1961; and its delivery to Fischers is established as being after April 1, 1961, the date on which Fischers moved into the St. Mary's Drive property, only after inquiries and requests by Fischers addressed to various employees of the company. Prior to April 1, the Fischers had delivered a deed of the Cleveland Street property to the company. Feurer after being contacted by Fischers asked Kelly for the check for the difference payable to Fischers, and in a day or two Kelly gave Feurer such check, which was held by Feurer for some time, and delivered to Fischers on June 18, 1961.

There was uncontradicted evidence that at the time of entering into the contract Feurer inquired as to whether Fischers' Cleveland Street property was mortgaged, and Fischers asked Feurer if the St. Mary's Drive property was mortgaged; he assured them that it was not. The evidence shows that as a matter of policy of the corporation, construction loans were not shown on their contracts of sale because they paid them off after a sale and Feurer as salesman had no knowledge as to whether the properties were mortgaged or not, but that Feurer was carrying out his orders when he advised the purchasers that no mortgage existed on the property they were buying and that they could depend on Kelly-Louvier; he had so been instructed to advise prospective purchasers. There is also uncontradicted evidence that previous to entering into the contract Fischer suggested that he could get another lawyer or real estate man to represent him and Feurer said "no you don't have to do that. Kelly-Louvier is the biggest outfit in Southern Illinois, you can depend on them." The evidence also disclosed that as president of the corporation Kelly had been instrumental in setting up and was aware of such policies and practices and that he knew the salesmen were making such repre-

sentations, regardless of the fact that the properties of the corporation were subject to construction loans. There was also evidence that shows Kelly was the moving spirit of the corporation; that the business was not so large and extensive as to make it unfair to presume that there was some knowledge on his part, of the transaction in question. Louvier testified that when the contract was approved by him he took the matter up with Kelly and gave Kelly $50 which Feurer had collected from Fischers at the time of signing. The evidence is uncontroverted that the appellant Kelly had never personally communicated with the Fischers. The evidence also shows that Kelly knew that the corporation was short of working cash, and that contrary to company rules, which he had participated in making, and custom, he did not, in five separate transactions, including the one with Fischers, cause a title policy to be ordered or cause existing mortgages upon the real estate sold under his direction and supervision, to be satisfied.

There was also evidence that after it was determined there was some irregularity, a meeting was held at the offices of Citizens at which Kelly was present, along with other officers of the corporation, at which Kelly admitted that he had created the situation without the knowledge of the other officers and employees, and admitted that he knowingly failed to pay off the mortgages. Louvier testified that his words were "I created the problem without the knowledge of any other member of the firm." Another witness testified that when Kelly was questioned about his knowledge of the transactions, including the Fischer transaction, that Kelly "stated that he had full knowledge of the matters and that he assumed full responsibility over that, that it was his function to take care of those matters." The meeting at Citizens was followed by a meeting at the Kelly-Louvier offices, where, according to the corporation's attorney, Kelly "reiterated what he said at Citizens Savings and Loan As-

320

sociation, that he knew about the conveyances that had been made, and admitted his sole guilt as he called it in the matter, his sole responsibility"; and "He was questioned about the use of the money involved and he again stated the money had been used for working capital"; and on cross-examination of this witness the witness further testified that Kelly "did state as financial manager and president of the company and over-all manager he was responsible for these items and to his knowledge and in fact the other officers had no knowledge."

Kelly, called on his own behalf, claimed to have no independent recollection of the Fischer transaction, nor of signing the deed, and admitted he made no effort to check whether the property was free and clear of a mortgage lien at the time he signed the warranty deed to Fischers; he also admitted that he knew the contruction loans were in existence because he had arranged for them and made them. He testified with reference to his statement at Citizens offices, that the other witnesses' testimony was not correct and further testified, "I possibly said as president I would be responsible."

Appellant argues that fraud cannot be presumed and must be proved by clear and convincing evidence; and that since there was a lack of direct communication between Kelly and Fischers, that Kelly made no representation as a statement of fact which was untrue and known to be untrue by Kelly; and argues that Kelly made no representation with intent to deceive for the purpose of inducing Fischers to act upon it, and that Fischers did not in fact rely on a misrepresentation of Kelly and were not induced by Kelly's misrepresentation to act to their injury or damage. He points out that Fischers delivered their deed of the Cleveland Avenue property before April 1, whereas the corporation deed was executed and delivered much later, and that after April 1 there could have been no reliance and damage; that the execution of the warranty by Kelly was not a representation as dis-

tinguished from a warranty in the law, and that it is essential that the person claiming fraud show that he changed his position or was damaged while relying reasonably on a misrepresentation; and since Fischers gave their deed before Kelly executed the warranty deed to them and they parted with nothing after April 1, 1961, they cannot be said to have relied on Kelly's misrepresentation, even if the warranty was to be considered as a representation. He points out that Feurer, who was also a counter-defendant, was the only agent of the corporation that communicated with Fischers before April 1 and the court found Feurer "was not guilty of or participated in any knowing act to defraud the counter-plaintiffs"; and since the evidence shows that Louvier was the sales manager, or supervisor of the salesmen, and that Feurer whose sole capacity was nothing more than a salesman, was under direct supervision and control of Louvier, and not Kelly, that Kelly cannot be held responsible for the actions of the employees of the corporation of which he was president, since there was no proof of Kelly's knowledge of the details of the transaction.

 There is no general rule for determining what facts will constitute fraud; whether or not it is found depends upon the special facts of each particular case. Majewski v. Gallina, 17 Ill2d 92, 160 NE2d 783. Fraud includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether suppression of truth or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, or by word of mouth or by look and gesture. People ex rel. Karr v. Weihe, 30 Ill App2d 361, 174 NE2d 897. As a general rule a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. 19 Am Jur2d Corporations par 1384. The mere fact that a person is an officer or director does not per

se render him liable for the fraud of the corporation or of other officers or directors. He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud. 13 ILP Corporations par 353; Hough v. Commercial Wheat Growers Co., et al., 212 Ill App 306.

Examination of this record leads us to believe that the failure to clear the title to the property sold to Fischers was no mere oversight, that Kelly knew the customs and practices of the employees and participated to such an extent in violating the rules of the corporation to become an active participant in the fraud, and that he cannot be heard to say that his actions were only those of an officer performing his required duties.

The rule is that whoever participates in a fraudulent act is guilty of fraud. In the case of Hahl v. Brooks, 213 Ill App 134, 72 NE2d 727, the Court said:

> "Appellant, Hahl, was responsible for the false and fraudulent representations made by Moody within the scope of his agency, and because he referred the plaintiff to Moody for information as to the state of the title. He was as much responsible for the falsehood and fraud as if he had been guilty of them personally."

In Creighton v. Elgin, 395 Ill 87, 69 NE2d 501, the Court stated:

> "All those taking part in a fraudulent transaction will be regarded as participants therein and their rights are subject to the same rule. Svalina v. Saravana, 341 Ill 236, 173 NE 281, 87 ALR 821; Garlick v. Imgruet, 340 Ill 136, 172 NE 164; Third Nat. Bank v. Norris, 331 Ill 230, 162 NE 829; Rosenbaum v. Huebner, 277 Ill 360, 115 NE 558."

Appellant Kelly also raises the question of the failure of the counterplaintiffs to take ordinary precautions to ascertain the truth. It is generally held that fraud

may be predicated on false representations or conceal-ments, although the truth could have been ascertained by an examination of public records. 23 Am Jur Fraud and Deceit par 163; McCormick v. Miller, 102 Ill 208. In the absence of circumstances putting a reasonable person on inquiry, a person is justified in relying on a misrep-resentation of a material fact without making further inquiry. 19 ILP Fraud par 14; Tate v. Jackson, 22 Ill App 2d 471, 161 NE2d 156; Simon v. Carlson & Sons, Inc. v. Fricks, 45 Ill App2d 88, 195 NE2d 17. Where it appears that one party to a transaction has been guilty of an in-tentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his ac-tions, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exer-cised reasonable diligence and care. Peterson v. Yackt-man, 25 Ill App2d 208, 166 NE2d 452. Counterdefendant Kelly cannot assert the defense that counterplaintiffs were not sufficiently careful to discover the fraud. They were innocently, specifically assured, that they needed no other professional counsel.

Even looking at the evidence most favorable for Kelly, we believe he should be held responsible, on a theory of negligent misrepresentation. He admits that his was the responsibility of seeing that purchasers received a clear title, and that he at no time made an effort to check if the conditions set forth in either the contract or warranty deed were fulfilled.

In Texas Tunneling Co. v. City of Chattanooga, Tenn., 204 Fed Supp 821, after an extensive discussion covering the development of deceit and negligent fraud as a basis for recovery, the court said on page 830:

> "For these reasons the Court holds that an action should be allowed for negligent misrepresentations with regard to business transactions when damages proximately occur from justifiable reliance thereon.

This view has been adopted by the American Law Institute and is set forth in Sec 552 of the Restatement of the Law of Torts as follows:

" 'One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

" '(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

" '(b) harm is suffered

" '(i) by the person or one of the class of persons for whose guidance the information was supplied, and

" '(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.' Restatement, Torts, Sec 552."

and at 832, it said:

". . . the real issue in this regard is whether a duty to refrain from negligent misrepresentation may be owed to a plaintiff who receives the misrepresentation through an intermediary.

"As indicated above, the American Law Institute, in the Restatement of Torts, has answered this question in the affirmative, . . . ."

The fact that a corporation must act through its agents has no bearing on appellant's liability. Aldridge v. Fox, 348 Ill App 96, 108 NE2d 139; Laver v. Kingston, 11 Ill App2d 323, 137 NE2d 113.

In B. F. Hirsch, Inc. v. C. T. Gustafson Co., Inc., 315 Ill App 56, 42 NE2d 123, defendant Broucek, an employee of the corporation, had negligently let jewelry be stolen. The trial court held the corporation liable but not the

agent Broucek. In reversing the judgment as to Broucek, the court pointed out that Broucek in a statement said that he operated as a wholesale jeweler under the trade name of C. T. Gustafson Co., Inc., an Illinois corporation. The court said, "this is another case of doing business under what is generally known as a 'corporate veil' " and added,

> "Moreover, it is well established that in an action for the recovery of damages, both the employer and employee, whose negligence while in the line of his employment caused the damage, may be sued and held liable."

■■■ By failing to argue the seventh point of his brief, to the effect that fraud cannot be pleaded generally, for which authorities are cited, this point is considered to be waived. A point made but not argued may be considered waived. Appellate Court Rule 7, Sec IV.

We agree with the result in the trial court and accordingly affirm the judgment.

Judgment affirmed.

MORAN and WRIGHT, JJ., concur.