[No. 2200-1. Division One. November 25, 1974.]

MARVIN R. KAAS, *Respondent*, v. R. L. PRIVETTE *et al.*,
*Defendants*, ROBERT W. PRIVETTE *et al.*, *Appellants*.

*James R. Young* and *Koenigsberg, Brown, Sinsheimer, Stone & Meltzer,* for appellants.

*David A. Best,* for respondent.

CALLOW, J.—The plaintiff, Marvin Kaas, sued to rescind a purchase of corporate stock and recover the purchase price which had been paid. Suit was brought against the owner-seller of the stock, R. L. Privette; the party holding a security interest therein, R. W. Privette; and the remaining stockholder, Farrel L. Haws. The trial court entered findings, conclusions and a judgment in favor of the plaintiff which dismissed the seller-owner but awarded judgment against the secured party and the remaining stockholder for $10,000 plus interest and costs. The judgment further removed all claims of the plaintiff to the stock, cancelled the $10,000 promissory note given by the plaintiff-purchaser to the defendant-secured party for the balance of the purchase price and made an award on a counterclaim.

The issues raised concern the duty of disclosure of material facts by a stockholder, by a party holding a security interest in the stock sold and by a remaining stockholder to a prospective purchaser.

R. W. Privette was the owner and operator as sole proprietor of a Ford agency in Redmond, Washington, from 1954 to 1965. During this period, R. W. Privette operated under an associate dealership agreement with Ford Motor Company and Hall's Motors, Inc., a Ford dealership located in Kirkland, Washington. The associate dealership agreement enabled R. W. Privette to hold himself out as a Ford dealership but limited him to the purchase of inventory and parts and to warranty adjustments from the parent dealership, Hall's Motors, Inc.

In 1965, the business was incorporated under the name of Bob Privette Motors, Inc., with authorized capital of 500 shares of common stock having a designated par value of $100 per share. At the time of incorporation, 450 shares of stock were issued: 399 shares to R. W. Privette, 50 shares

to R. L. Privette, the son of R. W. Privette, and 1 share to a third person. In exchange for the stock, all assets of the proprietorship were transferred to the corporation except the associate dealership agreement involving R. W. Privette, Hall's Motors, Inc., and the Ford Motor Company. R. W. Privette intentionally retained all interest in the associate dealership personally. Before 1969, the stock ownership in Bob Privette Motors, Inc., changed hands by sale and transfer so that by January 1969, the stockholders were R. L. Privette, who held 225 shares which were pledged to R. W. Privette, his father, as security for payment of the purchase price, and Haws, who held the remaining 225 shares. Both stockholders and the secured party were aware that the corporation did not own the associate dealership with Hall's Motors, Inc., and Ford Motor Company. All of the defendants were officers and directors of the corporation.

In the fall of 1969, the plaintiff Kaas, employed as parts and service manager of Bob Privette Motors, Inc., since February of that year, was asked by R. W. Privette and Haws to purchase the 225 shares owned of record by R. L. Privette. R. L. Privette had not made any payments on the purchase price due R. W. Privette. Neither R. W. Privette nor Haws disclosed to the plaintiff that the corporation did not have an associate dealership agreement with the Ford Motor Company or that the corporation had suffered a net loss for each fiscal year of its operation. Instead, these defendants showed the plaintiff a financial statement which implied that the corporation had a dealership. The defendants R. W. Privette and Haws told the plaintiff that they had made a good living from the business and that the value of 225 shares of the stock was approximately $20,000, the offering price. These defendants did not point out to the plaintiff that the current liabilities exceeded the current assets and that the corporation was having difficulty in paying its current expenses. Further, they did not inform the plaintiff that $18,118.83, reflected as corporate assets, was carried as goodwill on the books and had been since

the corporation's inception. The plaintiff had a limited formal education, little experience in financial affairs and was unaware of the enumerated deficiencies. R. L. Privette did not participate in the negotiations with the plaintiff.

Pursuant to a stock sale agreement dated January 1, 1970, entered into between R. W. Privette, R. L. Privette and the plaintiff, the plaintiff Kaas purchased the 225 shares carried in the name of R. L. Privette for the sum of $20,000, $10,000 of which was paid in cash and the balance represented by a promissory note delivered to R. W. Privette.

In June 1970, Kaas learned from the Ford Motor Company that the corporation did not own the associate dealership but that it was held personally by R. W. Privette. The plaintiff thereupon disassociated himself from the corporation, tendered the stock to the defendants and commenced this action to rescind the purchase and cancel his outstanding obligation. The findings of the trial court reflect in greater detail the facts as stated.

The findings are supported by substantial evidence in the record and, therefore, stand as verities on appeal. The unraveling and deciphering of the evidence is a function of the trial judge, and we will not upset his interpretation of the testimony when any reasonable view substantiates his findings even though there may be other reasonable interpretations. We turn to a discussion of the issues.

## I. The Duty Of Honest Statement And Disclosure

### A. *Affirmative Misstatements*

A buyer is entitled to rely upon the truth of a statement of a material fact made about the subject matter of a sale. *Scroggin v. Worthy*, 51 Wn.2d 119, 123, 316 P.2d 480 (1957); 3 Restatement of Torts § 540 (1938). A prospective buyer may accept a statement about a material fact at face value if the statement is made to induce a sale. Recourse is available against such a misrepresentation. *Johnson v. Olsen*, 62 Wn.2d 133, 381 P.2d 623 (1963). A representation that dividends had been paid out of profits when, in fact, the distribution was from capital was held to be

false and material in *J.C. Miller Estate, Inc. v. Drury*, 120 Wash. 628, 208 P. 77 (1922); and *Mills v. Knudson*, 54 Wash. 614, 103 P. 1123 (1909), held that a stockholder who falsely represents the extent of the debts of a corporation is liable to the purchaser who relies upon the statement to his detriment. *See also Michaelson v. Hopkins*, 38 Wn.2d 256, 228 P.2d 759 (1951); *Shores v. Hutchinson*, 69 Wash. 329, 125 P. 142 (1912). The affirmative statements of the defendants concerning the value of the stock constituted direct fraudulent misrepresentations. Their comments about the "good living" they had earned from the business and the financial statements submitted misled the plaintiff by inference.

### B. *Statements as to Value*

■ The defendants told the plaintiff that the stock offered to him had a value of $20,000 when in fact it could not have had such a value under any realistic appraisal. Where the owner of corporate stock sells it by inducing the buyer to buy through a misrepresentation of the value of the corporate assets, such a misrepresentation is an assertion of fact, not opinion; and the selling stockholder is responsible for loss to the buyer. *Dalen v. Hansen*, 166 Wash. 597, 8 P.2d 416 (1932); *Blewett v. Ward*, 159 Wash. 651, 294 P. 577 (1930); *McGowan Co. v. Carlson*, 79 Wash. 92, 139 P. 869 (1914). In like manner, a sale of stock induced by a company officer who falsely stated that the company was solvent, making profits, paying dividends and that its stock had been issued for value received is subject to rescission; and those practicing the fraud are subject to a judgment for the return of the purchase price of the stock. *Harris v. Saunders*, 108 Wash. 195, 182 P. 949 (1919).

Applicable to the circumstances of this case is 3 Restatement of Torts § 525 (1938) which states:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpost [*sic*] of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for

the harm caused to him by his justifiable reliance upon the misrepresentation.

As an illustration to that section of the Restatement, we find on page 62:

3. A, knowing that the X Corporation is hopelessly insolvent, in order to induce B to purchase from him shares of its capital stock assures B that the shares will within five years pay dividends which will amount to the purchase price of the stock. B is justified in accepting these statements as an assurance that A knows of nothing which makes the corporation incapable of earning such dividends.

## C. *Duty To Disclose*

The defendants were not entitled to remain silent concerning the company's difficulties or to fail to disclose the absence of a dealership agreement with the automobile manufacturer. Silence is not fraud when the purchaser is on equal footing with the seller in the opportunity to be aware of the material aspects of the subject matter of the sale. *Lincoln v. Keene*, 51 Wn.2d 171, 316 P.2d 899 (1957). However, the trial court did not find actual knowledge or an obligation to know the material facts in the plaintiff, and we agree that the vendee should not have been expected to know the true situation even though he was present at the company for some time. The rule has been that silence as to a material fact does not constitute fraud where there was no duty to disclose (*see O'Neile v. Ternes*, 32 Wash. 528, 73 P. 692 (1903)) but that once a duty to speak is found, a vendor's suppression of a material fact is tantamount to an affirmative misrepresentation. *Simpson Timber Co. v. Palmberg Constr. Co.*, 377 F.2d 380 (9th Cir. 1967); *Oates v. Taylor*, 31 Wn.2d 898, 199 P.2d 924 (1948); *Kelley v. von Herberg*, 184 Wash. 165, 50 P.2d 23 (1935); *Farmers State Bank v. Lamon*, 132 Wash. 369, 231 P. 952, 42 A.L.R. 1072 (1925); 3 Restatement of Torts § 551 (1938).

## D. *Fiduciary Relationship Unessential*

The trend is toward finding or imposing a duty to disclose material impediments to a transaction even though

there is an absence of a fiduciary relationship between the parties in the classic sense. *Obde v. Schlemeyer,* 56 Wn.2d 449, 353 P.2d 672 (1960); 36 Wash. L. Rev. 202 (1961). The case of *Goodin v. Palace Store Co.,* 164 Wash. 625, 4 P.2d 493 (1931), embraces the view that a higher standard of honesty should be imposed between parties to a transaction than the caveat emptor approach which justified those who dealt at arm's length in a commercial transaction in jousting toe to toe. The court stated in that case on page 630:

> We are convinced . . . that the respondent was induced to purchase the stock in reliance on the president's misrepresentations as to the financial condition of the corporation, . . . That constitutes fraud. It will not avail appellants to insist that no representations were made as to the financial condition of the corporation. The president knew that the corporation was insolvent—that knowledge is conclusively imputed to him—when inquiry was made as to the solvency of the corporation. There was either a non-disclosure of the condition of the corporation, a suppression of the fact of insolvency of the corporation—it was the president's duty to either tell the truth to the respondent or refuse to take his money—or there was an affirmative representation that the corporation was financially sound. Otherwise, the purchase would not have been made. The representation was made as to an existing fact; it was known to be false by the president, who made the representation. The respondent acted on that representation to his prejudice, and he was justified in accepting as true the statements of a man in the position of the corporation's president, the head of a business recognized for years as a financially sound institution.

> "When it is sought to rescind a contract of subscription to or a purchase of stock on the ground of fraud, or to recover damages for the fraud, the courts, in determining what constitutes fraud, are governed by substantially the same rules as apply in the case of other contracts and of contracts between natural persons. There is fraud, for the purposes either of rescission or of an action for damages, whenever there is a false representation of a material fact, or such a concealment or non-disclosure of a material fact as is equivalent to a false representation, made

with knowledge of its falsity or recklessly and without knowledge as to its truth or falsity, and if it is of such a character that the party to whom it is made has a right to rely upon it, and it is in fact relied and acted upon by him to his damage or injury." 14 C.J., § 874, p. 602.

It is now recognized generally that those facts must be disclosed which are so vital and material to a transaction that if known by one party and not the other, the agreement would be voidable. In such circumstances, the failure to disclose the vital facts is fraudulent. *Sorrell v. Young*, 6 Wn. App. 220, 491 P.2d 1312 (1971). We concur with the trial court that not only was the financial situation of the corporation a material consideration but also that the absence of a dealership agreement was material as well.

### E. *Statutory Duty To Disclose*

The impact of RCW 21.20 is mentioned only incidentally by one of the appellants who states that the statute is not applicable because the transfer was "really one in which the plaintiff was purchasing a 50 percent interest in a going business" and that the purchase of security as covered by RCW 21.20 "was not involved." We do not accept this interpretation of the statute and deem the issue worthy of comment though unnecessary to the result. RCW 21.20.010 reads:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW 21.20.430 reads in part:

(1) Any person, who . . . offers or sells a security by means of fraud or misrepresentation is liable to the

person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, . . .

(2) Every . . . officer, or director . . . is also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

RCW 21.20.010 has been interpreted by *Clausing v. De-Hart*, 83 Wn.2d 70, 515 P.2d 982 (1973), to apply to "face to face" negotiations between private individuals for the sale of corporate stock. Implicit in the holding of *Shermer v. Baker*, 2 Wn. App. 845, 472 P.2d 589 (1970), is the proposition that when a seller of securities makes an untrue statement or does not state a material fact necessary to an informed decision by a purchaser, such action is fraudulent per se; and any person injured by the statutory violation has a remedy in the courts. RCW 21.20 does set a statutory standard of honesty and candor in direct dealings between individuals when the offer, sale or purchase of a security is involved; a standard which was not met here.

### F. *Conclusion*

Therefore, if a sale of corporate stock is induced by representations upon which the purchaser is entitled to rely by virtue of difficulty in ascertaining the true circumstances concerning the object of the sale, the seller is liable for false representations even though no fiduciary relationship existed between the parties. *McFeron v. Shoemaker*, 73 Wash. 450, 131 P. 1126 (1913). In addition, if circumstances exist where the vendor is particularly aware of an infirmity in the subject matter and the vendee is not, the duty arises in the vendor to disclose the material facts likely to affect the judgment of the vendee in his decision on whether or not to complete the sale. *Goldfarb v. Dietz*, 8 Wn. App. 464,

506 P.2d 1322 (1973). Rescission of the sale is warranted, and the vendee is entitled to be made whole by being placed in the financial condition in which he would have been had he not entered into the transaction. *Boehme v. Broadway Theater Co.*, 91 Wash. 104, 157 P. 218 (1916); *Landis v. Wintermute*, 40 Wash. 673, 82 P. 1000 (1905). *See also Buttnick v. Clothier*, 43 Wn.2d 667, 263 P.2d 266 (1953).

## II. PERSONS LIABLE

 Each party who joins in misrepresenting material facts to a prospective purchaser is required to return the defrauded purchaser to his former position when the grounds for rescission are proven. *Dart v. McDonald*, 107 Wash. 537, 182 P. 628 (1919); *Wentworth v. Moore*, 71 Wash. 396, 128 P. 634 (1912). Every participant in a fraud and each one who assists another in the perpetration of the fraud is liable to the injured party. *Citizens Sav. & Loan v. Fischer*, 67 Ill. App. 2d 315, 214 N.E.2d 612 (1966); *Fassnacht v. Emsing Gagen Co.*, 18 Ind. App. 80, 46 N.E. 45 (1897); *Nailor v. Western Mortgage Co.*, 54 Wn.2d 151, 338 P.2d 737, 72 A.L.R.2d 938 (1959); 37 Am. Jur. 2d *Fraud & Deceit* § 305 (1968). Where false representations by a stockholder concerning the financial condition of a corporation are made to induce a prospective purchaser to purchase stock in the corporation from another stockholder, participants in the fraud are jointly and severally liable to the person defrauded for the return of the purchase price whether or not the misrepresenting stockholder has been an actual party to the sale. *See Johnson v. Harrigan-Peach Land Dev. Co.*, 79 Wn.2d 745, 754, 489 P.2d 923 (1971); *Rieger v. H. I. S. Motor Corp.*, 126 Wash. 412, 218 P. 216 (1923). The responsibility to make the plaintiff whole was properly imposed on both the defendant R. W. Privette and the defendant Haws.

## III. MEASURE OF RECOVERY

 A vendee entitled to rescission of a contract entered into because of fraud is warranted in recovering all that has been paid the vendor plus interest and costs. The pur-

152

pose of rescission is to make the defrauded party whole, and thus a note given for the purchase price of stock by a vendee may be cancelled where the purchase was induced by the fraud of the vendor. *Cunningham v. Morris*, 56 Wash. 341, 105 P. 839 (1909). In addition, it is proper to allow interest as a measure of recovery where money has been wrongfully obtained as a result of misrepresentations concerning a corporation's financial condition. *Gray v. Reeves*, 69 Wash. 374, 125 P. 162 (1912).

The denial of attorneys' fees to R. W. Privette on an interrelated promissory note was justified under the circumstances. *In re Renton*, 79 Wn.2d 374, 485 P.2d 613 (1971).

The judgment is affirmed.

SWANSON, C.J., and JAMES, J., concur.