[No. 7581–1–I.   Division One.   April 28, 1980.]

MARY JANE BAZAN, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

18

*John R. Moffat* of *Evergreen Legal Services,* for appellant.

*Slade Gorton, Attorney General,* and *Donald Foss, Jr., Assistant,* for respondent.

CALLOW, C.J.—This appeal involves the construction and constitutionality of RCW 74.04.300, which provides for the recovery of public assistance overpayments; the validity of WAC 388-44-020, which declares as fraud a public assistance recipient's failure to notify the Department of Social

and Health Services of any change in circumstances affecting eligibility; and the computation of medical assistance and food stamp overpayments.

Prior to May of 1975, Mary Jane Bazan received intermittent public assistance payments under the Aid to Families with Dependent Children (AFDC) program. The assistance granted Ms. Bazan fell within the AFDC–E (unemployed father) category of assistance authorized by 42 U.S.C.A. § 607 (1974 & Supp. 1979) and made available to 2–parent families under limited circumstances.[1] In May of 1975, Ms. Bazan reported that the natural father of her children, Joe DeLeon, had left her home. Ms. Bazan's grant was thereafter changed to the AFDC–R (regular) category of assistance pursuant to 42 U.S.C.A. § 606(a) (1974), which provides AFDC federal matching funds to the states to aid the needy child under the age of 18 who has been deprived of parental support or care by reason, *inter alia,* of a parent's continued absence from the home and who is living with any of the relatives specified in the statute.[2] Ms. Bazan received AFDC–R assistance, including medical care, and food stamps over the next 25 months.

Joe DeLeon was present in Ms. Bazan's home for 10 of the 25 months during which she received the AFDC–R assistance and food stamps. Ms. Bazan stated that she did not report his presence to the Department of Social and Health Services due to her expectation that he would not remain in the home permanently and because of his failure to provide any financial support for his children. Ms. Bazan had no income during the 25–month period other than her AFDC–R assistance and food stamps.

Following a report to the department and an investigation by it regarding Mr. DeLeon's presence in the home, Ms. Bazan requested and received a hearing to determine her eligibility for assistance during the 25–month period.

---

[1] *See also* RCW 74.12.010; WAC 388–24–040(3); WAC 388–24–135.

[2] *See also* RCW 74.12.010; WAC 388–24–040(3).

The hearing decision concluded that Ms. Bazan was eligible to receive grant and medical assistance and food stamp benefits only during the 15 months that Mr. DeLeon was absent from Ms. Bazan's home. The decision also concluded that Ms. Bazan's reasons for not notifying the agency of Mr. DeLeon's presence were insufficient to overcome the presumption of fraud contained in WAC 388-44-020(2). In determining the amount of overpayment, the decision concluded that Ms. Bazan's eligibility for an AFDC-E grant and nonassistance food stamps could not be determined because no application for them had been made during the 25-month period. The total grant and medical assistance overpayments included a 25 percent fraud penalty pursuant to RCW 74.04.300. The department did not take the position that the food stamps were fraudulently obtained.

Ms. Bazan filed a timely petition for review in the Superior Court. The trial court affirmed the department's decision.

Ms. Bazan appeals. Four issues are raised:

1. Has the department exceeded its authority by declaring a recipient's failure to notify the department of any change in circumstances affecting eligibility as a fraud which subjects the recipient to a 25 percent overpayment penalty?

2. Is the amount of an overpayment fraudulently obtained by an ineligible recipient to be determined under RCW 74.04.300 by subtracting from the amount of assistance to which the recipient was not entitled the amount of assistance that the recipient would have been eligible to receive during the period of ineligibility from any other category of assistance?

3. Did the department err in calculating the amount of the food stamp overpayment?

4. Does the recoupment authorized by RCW 74.04.300 of an extra 25 percent of funds fraudulently received under the AFDC program violate the supremacy clause as contrary to the social security act?

The first issue is whether the department exceeded its authority by declaring a recipient's failure to notify the department of any change in circumstances affecting eligibility as a fraud which subjects the recipient to a 25 percent overpayment penalty. Ms. Bazan argues that RCW 74.04-.300 does not authorize the department to impose a 25 percent overpayment penalty because she had no obligation to report the presence of Mr. DeLeon in her home, citing *State v. Walters,* 8 Wn. App. 706, 508 P.2d 1390 (1973). She concedes that his presence in her home rendered her ineligible for any category of AFDC assistance due to his failure to register for the work incentive program as required by 42 U.S.C.A. § 607 (1974 & Supp. 1979).

RCW 74.04.300 provides in part as follows:

> If a recipient receives public assistance for which he is not eligible, or receives public assistance in an amount greater than that for which he is eligible, the portion of the payment to which he is not entitled shall be a debt due the state: *Provided,* That if any part of any assistance payment is obtained by a person as a result of a wilfully false statement, or representation, or impersonation, *or other fraudulent device,* or wilful failure to reveal resources or income, one hundred twenty–five percent of the amount of assistance to which he was not entitled shall be a debt due the state and shall become a lien . . . *It shall be the duty of recipients of public assistance to notify the department within twenty days of the receipt or possession of all income*[3] *or resources*[4] *not previously declared to the department,*

---

[3]"Income" is defined at RCW 74.04.005(12).

[4]"Resource" is defined in part as "[a]ny asset, tangible or intangible, owned by or available to the applicant at the time of application, which can be applied toward meeting the applicant's need, either directly or by conversion into money or its equivalent: . . ." RCW 74.04.005(11). Two of the resources that an applicant or recipient may retain and yet be eligible for public assistance are used and useful personal clothing and personal property that has great sentimental value. RCW 74.04.005(11)(b), (f); *Anderson v. Morris,* 87 Wn.2d 706, 714–17, 558 P.2d 155 (1976). Mr. DeLeon testified that he had given gifts of personal clothing and bicycles to his children.

*and any failure to so report shall be prima facie evidence of fraud: . . .*

(Italics ours.) WAC 388-44-020(2) partially provides that

The failure of any recipient of public assistance to notify the department within twenty days of any change in circumstances affecting eligibility or need, including receipt or possession of all income or resources not previously declared to the department, shall be prima facie evidence of fraud.

*Accord,* WAC 388-28-255(2). If assistance is obtained as a result of a willful act of the recipient to deceive the department, *i.e.,* by fraud, WAC 388-44-020(1), the department's regulations provide that the overpayment shall be computed as 125 percent of the amount of assistance, including medical care, to which the recipient was not entitled. WAC 388-44-035(1)(a); WAC 388-44-040(1)(a).

Resolution of the first issue depends in part upon whether a recipient's failure to report may constitute either a "fraudulent device" or "false representation" within RCW 74.04.300. We hold that it may.

A "fraudulent device" ordinarily imports a plan, project, scheme, or artifice, devised by design to trick or deceive. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976); *State v. Whitehouse,* 123 Wash. 461, 463, 212 P. 1043 (1923); *Black's Law Dictionary* 538 (4th rev. ed. 1968). Fraud, on the other hand, is a less specific concept which may encompass an intentional misrepresentation of a material, existing fact that is relied upon in good faith by another to his damage. *E.g., Marion v. Grand Coulee Dam Hotel,* 35 Wn.2d 589, 592, 214 P.2d 204 (1950). Fraud may also be the willful concealment of a material fact that one is bound to disclose in good faith. *Kaas v. Privette,* 12 Wn. App. 142, 147, 529 P.2d 23, 80 A.L.R.3d 1 (1974). The department in this case made no finding relative to a fraudulent device but rested its decision upon the presumption of fraud established by WAC 388-44-020(2). If RCW 74.04.300 requires findings supportive of a fraudulent device, the department's decision

would not permit a conclusion that sufficient proof had been established to meet the statutory mandate. If, however, the legislature intended a fraudulent device to encompass fraud, and if the department acted within the scope of its authority by declaring as fraud a recipient's failure to notify the department of any change in circumstances affecting eligibility, then the department's decision must stand.

■■ The interpretation of a statute by an agency entrusted with its administration is entitled to great weight. *Moses v. Department of Social & Health Servs.*, 90 Wn.2d 271, 274, 581 P.2d 152 (1978). Where the statutory language is clear and unambiguous, there is no room for construction. *Hatfield v. Greco,* 87 Wn.2d 780, 557 P.2d 340 (1976). In the case of an ambiguity, we must examine the statutory scheme as a whole, construing it so that no portion is rendered superfluous. *Sim v. State Parks & Recreation Comm'n,* 90 Wn.2d 378, 383, 583 P.2d 1193 (1978); *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Statutory language must be interpreted with reference to the general object and purpose of the legislation. *Strenge v. Clarke,* 89 Wn.2d 23, 29, 569 P.2d 60 (1977).

■ We conclude from the language of RCW 74.04.300 that the legislature intended to include fraud within the term "fraudulent device." An ambiguity exists due to the statute's language that a recipient's failure to notify the department of the "receipt or possession of all income or resources not previously declared" shall be "prima facie evidence of fraud: . . ." RCW 74.04.300. RCW 74.04.300 does not state specifically that fraud shall subject a recipient to the 25 percent penalty, though this was manifestly the legislature's purpose. This ambiguity compels an interpretation of the statute so that the affirmative notification requirement is not rendered superfluous.

RCW 74.04.300 is a remedial measure primarily intended "to safeguard state revenues and reimburse the State for the expense of investigation and the loss resulting from the

public assistance recipient's fraud." *Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 189, 550 P.2d 529 (1976). We construe "fraudulent device" to include fraud, given the legislative purpose and the context in which the term "fraudulent device" is used. *See generally Hartman v. State Game Comm'n, supra.* This effectuates the statutory purpose to recoup losses that directly and indirectly flow from a recipient's fraud, and it gives effect to the statute's affirmative notification requirement.

The legislative intent to include fraud within the term "fraudulent device" is also evidenced by the statute's language regarding obtaining payments by means of "a wilfully false statement, or representation, or impersonation, or *other* fraudulent device, . . ." RCW 74.04.300 (italics ours); *cf. State v. Whitehouse, supra* at 463. Standing alone, a willfully false statement, representation, or impersonation ordinarily connotes fraud, *see Gronlund v. Andersson,* 38 Wn.2d 60, 63, 227 P.2d 741 (1951); *Oates v. Taylor,* 31 Wn.2d 898, 903, 199 P.2d 924 (1948); *Gray v. Wikstrom Motors, Inc.,* 14 Wn.2d 448, 455–56, 128 P.2d 490 (1942), rather than a thought–out plan to deceive. By its use of the word "other," we perceive the legislature to have intended the term "fraudulent device" to be liberally construed to *include* fraud within its meaning.

Ms. Bazan does not challenge the rebuttable presumption of fraud contained in WAC 388–44–020(2). The question posed is whether the department invalidly imposes a duty of notification on the recipient and denominates a recipient's failure to notify it of any change in circumstances affecting eligibility as fraud.

Where the legislature specifically has delegated rule–making power to an agency, the agency's regulations are presumed valid until otherwise proven by one asserting their invalidity. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314–15, 545 P.2d 5 (1976). The challenged regulations need only be reasonably consistent with the statutes they implement, and they will not be declared

invalid absent an abuse of discretion, *i.e.,* "compelling reasons are presented sufficient to show the scheme is in conflict with the intent and purpose of the legislation." *Weyerhaeuser Co. v. Department of Ecology, supra* at 314, 317; *accord, Bellevue v. King County Boundary Review Bd.,* 90 Wn.2d 856, 861, 586 P.2d 470 (1978); *Lindsay v. Seattle,* 86 Wn.2d 698, 712, 548 P.2d 320, *cert. denied,* 429 U.S. 886, 50 L. Ed. 2d 167, 97 S. Ct. 237 (1976).

RCW 74.04.057 authorizes the department to promulgate such rules and regulations as are necessary to qualify the State for federal funds under the social security act (42 U.S.C.A. §§ 601 *et seq.* (1974 & Supp. 1979)). In implementing the social security act, the Department of Health, Education and Welfare promulgated 45 C.F.R. § 233.20(a)(19) (1979), which requires the states to establish state plans specifying uniform statewide policies for recoupment of overpayments of assistance. A state may recoup overpayments from current assistance grants

> Where such overpayments were occassioned [*sic*] or caused by the recipient's willful withholding of information concerning his income, resources or other circumstances which may affect the amount of payment . . .

45 C.F.R. § 233.20(a)(12)(i)(A)(2) (1979). Withholding of information includes

> A willful failure by the recipient to report changes in income, resources or other circumstances which may affect the amount of payment, if the State agency has clearly notified the recipient of an obligation to report such changes.

45 C.F.R. § 233.20(a)(12)(i)(B)(2) (1979). WAC 388–44–020(5) provides that a fundamental right of applicants and recipients is the right to be informed by the local office as to what circumstances affecting eligibility must be reported. Ms. Bazan does not contend this was not done. The implicit requirement of WAC 388–44–020(2)[5] that a recipient notify

---

[5]WAC 388–38–255, which was filed in 1977, explicitly requires the recipient to promptly and correctly notify the department of any change in circumstances affecting his or her eligibility for assistance.

the department of any change of circumstances affecting eligibility is consistent with the federal regulations and, therefore, a valid exercise of its rule–making authority.

WAC 388–44–020(2) also reasonably comports with the letter and spirit of RCW 74.04.300. The recipient is situated such that facts affecting eligibility are peculiarly within his or her knowledge but not readily ascertainable by the State except at considerable expense to itself and, ultimately, to the needy, dependent child whose protection is the "paramount goal of AFDC." *King v. Smith,* 392 U.S. 309, 325, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968). When these facts are not reported, the consequent loss to the State may be great. "[T]he State is entitled to recover its loss, the cost of making itself whole, and to impose a civil penalty upon the dishonest wrongdoer." *Burns v. Department of Social & Health Servs.,* 20 Wn. app. 585, 591–92, 581 P.2d 1069 (1978). The willful concealment of a material fact that one is bound to disclose in good faith is an indirect representation that the concealed fact does not exist, and constitutes fraud. *See Oates v. Taylor, supra* at 903; *Kaas v. Privette,* 12 Wn. App. 142, 529 P.2d 23, 80 A.L.R.3d 1 (1974). We hold that WAC 38–44–020(2) is a valid exercise of the department's rule–making authority.

We also uphold the department's decision and the validity of WAC 388–44–020(2) on the basis that a recipient's failure to report any change of circumstances affecting eligibility may constitute a "false representation" within RCW 74.04.300. As stated in *Oates v. Taylor, supra* at 902–03:

> "It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood. The concealment of a fact which one is bound to disclose is an indirect representation that such fact

does not exist, and constitutes fraud." 37 C.J.S. 244, Fraud, § 16a.

*Accord, Perkins v. Marsh,* 179 Wash. 362, 364–65, 37 P.2d 689 (1934) (quoted in *Oates v. Taylor, supra* at 903–04); *Kaas v. Privette, supra.* Ms. Bazan was under a duty to speak. According to the department's findings and conclusions, she fraudulently failed to discharge that duty. This failure amounts to a false and fraudulent representation.

In *State v. Walters,* 8 Wn. App. 706, 508 P.2d 1390 (1973), relied upon by Ms. Bazan, the defendant was charged with grand larceny under the criminal welfare fraud statute, RCW 74.08.331. One of the State's allegations was that the defendant had obtained public assistance by means of a failure to notify the department of a change in "family composition," her entry into a meretricious relationship. RCW 74.08.331 requires a showing, *inter alia,* that nonentitled public assistance be obtained by means of a willful failure to promptly notify the department "as required by law" of any change in status in respect to family composition. *State v. Walters, supra* at 707–08. The court stated as follows:

> For reasons best known to itself, the legislature deliberately determined in 1957 that it would limit a recipient's *statutory* duty to notify the department solely to notification of the receipt or possession of income or resources not previously reported to the department. We know of no statutory requirement which would impose an affirmative duty upon a recipient to notify the department (in contrast to an affirmative duty to fully *reveal* the material facts at the time of application, reapplication, or review) that he (or she) has entered upon a meretricious relationship of questionable duration with another.

*State v. Walters, supra* at 715. The entry into a meretricious relationship was not then, *standing alone,* proven to be a change affecting family composition. *State v. Walters, supra* at 717–18. It was not argued or shown to affect eligibility or need. *See Lewis v. Martin,* 397 U.S. 552, 559–60, 22 L. Ed. 2d 561, 90 S. Ct. 1282 (1970); *King v. Smith,*

*supra* at 327–33; 45 C.F.R. § 233.90(a) (1979); WAC 388–28–355. Hence, to the extent that the quoted portion above deals with an affirmative duty to notify the department of a meretricious relationship, it is correct. RCW 74.08.331 states that grand larceny may be committed by obtaining or attempting to obtain assistance by means of a willful failure to promptly notify the department "as required by law" of "any change in . . . family composition . . . or any other change in circumstances affecting his eligibility or need for assistance, or *other fraudulent device,* . . ." (Italics ours.) This language indicates that the legislature viewed the failure to promptly notify the department of a change in circumstances affecting eligibility as a fraudulent device. This was as similarly intended by RCW 74.04.300.

The second issue raised is whether the amount of a public assistance overpayment fraudulently obtained by an ineligible recipient should be determined by subtracting from the amount of assistance to which the person was not entitled the amount of assistance that the recipient would have been eligible to receive during the period of ineligibility from any other category of assistance. Ms. Bazan contends that the department erred in calculating the amount of overpayment because it refused as a matter of law to consider her eligibility for nonassistance medical assistance, WAC 388–82–005, WAC 388–82–010(6), absent a prior application therefor.

RCW 74.04.300 provides in part that the debt due the State when assistance is fraudulently obtained shall be the "amount of assistance to which [the person] was not entitled . . ." If no fraud is involved, the amount due the State is "the portion of the payment to which [the person] is not entitled . . ." RCW 74.04.300. The amount due under the statute is the same in both instances, except for the 25 percent penalty when fraud is involved. In contrast, the department's regulations provide that the amount due in case of fraud shall be "125 per cent of the amount of assistance, including medical care, to which he was not entitled during such period of ineligibility," whereas

If no willful act to deceive is involved, the overpayment shall be the amount of assistance, including medical care, to which he was not entitled during the period of ineligibility, provided that such overpayment shall be reduced by the amount of assistance that the recipient would have been eligible to receive during the period of ineligibility from any other category of assistance.

WAC 388-44-035(1)(b). *Accord,* WAC 388-44-040.

In effect, the department amends RCW 74.04.300 by exacting a penalty apart from the 25 percent penalty authorized by RCW 74.04.300 in cases involving fraud. The department has exceeded its authority by so distinguishing fraudulent and nonfraudulent overpayments for the purpose of calculating the amount to be reduced. The distinction cannot stand. *See generally Baker v. Morris,* 84 Wn.2d 804, 809-10, 529 P.2d 1091 (1974); *Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 815, 467 P.2d 312 (1970).

As between the two possible alternatives of how to calculate the amount to be recouped, we look to the purposes of both the public assistance program and RCW 74.04.300 since the language of RCW 74.04.300 fairly admits of either alternative. The needs of the dependent child and the fiscal integrity of the State's resources are both ensured and harmonized if the amount of overpayment, apart from the 25 percent penalty, is calculated in all cases according to the department's regulations as they pertain to nonfraudulent overpayments. *See* WAC 388-44-035(1)(b); WAC 388-44-040(1)(b). The regulations contemplate that such calculations can be made, and we have been cited to one decision where they were.[6]

---

[6] In *In re Timlin,* DSHS Admin. Dec. 1178 A-344 (Jan. 8, 1980), the department concluded that even though there had been a decided overpayment of medical services due to the presence of appellant's husband in the family home, the overpayment was the amount of medical services received less the amount of services the assistance unit would have been eligible to receive under the FAMCO–AFDC–E program pursuant to WAC 388-82-010(6).

■ The department's conclusion of law that Ms. Bazan's eligibility for nonassistance benefits could not be determined because she had not submitted an application for the assistance "during the period in question" is an error of law that calls for a partial reversal under RCW 34.04-.130(6)(d). On remand, the department should make a factual determination regarding the amount, if any, of medical assistance that Ms. Bazan would have been eligible to receive from any other category of assistance during the period of ineligibility. Ms. Bazan bears the burden of proving her eligibility for that assistance. *See Newbury v. Department of Pub. Assistance,* 80 Wn.2d 13, 15, 491 P.2d 235 (1971).

Ms. Bazan also raises the issue whether the department erred in calculating the amount of her food stamp overpayment. She argues that the department erroneously refused to consider her eligibility for nonassistance food stamps, WAC 388–54–415, absent a prior application for them.

The Food Stamp Act of 1964, 7 U.S.C.A §§ 2011 *et seq.* (1973 & Supp. 1979) was enacted to alleviate hunger and malnutrition among low income households. 7 U.S.C.A. § 2011 (Supp. 1979). The Secretary of Agriculture is authorized by the act to issue regulations, not inconsistent with the act, that "he deems necessary or appropriate for the effective administration of the food stamp program." 7 U.S.C.A. § 2013(c) (Supp. 1979). As a result of these regulations, certified households, including public assistance households, receiving food stamps under the food stamp program are required to report "[a]ll changes in household composition, such as the addition or loss of a household member". 7 C.F.R. §§ 273.12(a)(1)(ii) and (f)(1) (1979). The recipient shall be provided by the responsible state agency with a form to report these changes. 7 C.F.R. § 273.12(b) (1979); 7 C.F.R. § 273.12(f) (1979). If the change is not reported, the State shall file a claim against the household. 7 C.F.R. § 273.12(d) (1979). A failure to report the required information may or may not amount to fraud depending on whether the failure to report is done knowingly, willfully

and with deceitful intent. 7 C.F.R. § 273.12(d) (1979); 7 C.F.R. § 273.16(b) (1979); 7 C.F.R. § 273.18 (1979). The burden of proving fraud is on the state agency. 7 C.F.R. § 273.16(d) (1979).

As a general rule, where no fraud is involved, the state agency shall establish the correct amount of benefits the household should have received but must exclude those months that are more than 12 months prior to the date the overissuance was discovered. 7 C.F.R. § 273.18(b)(2) (1979). If fraud is proven, the state agency shall determine the correct amount the household was entitled to receive, calculated back to the month the fraudulent act occurred, except for the first month when a failure to report is involved. 7 C.F.R. § 273.18(c)(1) (1979).

As is apparent from the pertinent federal regulations, the amount of overpayment, fraudulently received or not, is to be calculated by taking into account the amount the household should have received. 7 C.F.R. § 273.18(b)(2) and (c)(1) (1979). Consistent with the federal regulations, the Department of Social and Health Services' regulations provide that when a household receives food coupons "in excess of the amount for which eligible," the household is liable for repayment. WAC 388–54–565; WAC 388–54–570. In light of these regulations and the purpose of the Food Stamp Act, we hold that the department erred by refusing to consider Ms. Bazan's eligibility for nonassistance food stamps. This, too, requires that we reverse and remand this case in part.

The final issue raised is whether RCW 74.04.300 violates the supremacy clause of the United States Constitution to the extent that it authorizes the department to recoup the 25 percent fraud penalty through mandatory deductions from future assistance payments. Ms. Bazan argues that we should reassess our decisions in *Burns v. Department of Social & Health Servs.*, 20 Wn. App. 585, 581 P.2d 1069 (1978) and *Caiola v. Department of Social & Health Servs.*, 17 Wn. App. 346, 562 P.2d 988 (1977), which

upheld the statute's constitutionality. She cites us to several letters to the Secretary of the Department of Social and Health Services from the Regional and Deputy Assistant Regional Commissioners of the Department of Health, Education and Welfare. Those letters present no matters that were not considered in *Caiola* and *Burns,* and we adhere to our prior decisions therein. We would only add to those decisions the statement that imposition of a 25 percent fraud penalty in no way affects the requirement that recoupments from current assistance payments must be limited on a case–by–case basis so as to not cause undue hardship to recipients. 45 C.F.R. § 233.20(a)(12)(i)(f) (1979); WAC 388–44–145(3)(a).

We affirm in all respects except as to the department's calculation of the medical assistance and food stamp overpayments. As to the medical assistance and food stamp overpayments, we reverse and remand for further proceedings consistent with this opinion. Attorney's fees are denied.

JAMES and DORE, JJ., concur.

Reconsideration denied June 19, 1980.

Review granted by Supreme Court September 19, 1980.