Dorothy JACKSON and Joyce Carter, Individually, on behalf of their minor children and on behalf of all others similarly situated, Plaintiffs,

and

Maria Bonilla, Individually, on behalf of her minor children, and on behalf of all others similarly situated, Plaintiff-Intervenor,

v.

Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare, et al., Defendants.

No. Civ–75–280.

United States District Court, W. D. New York.

Feb. 9, 1976.

K. Wade Eaton, Greater Up-State Law Project, Rochester, N. Y., Marilyn Zahm, Neighborhood Legal Services, Buffalo Legal Aid Bureau, Inc., Buffalo, N. Y., James S. Martin, Legal Aid Society of Schenectady, Inc., Schenectady, N. Y., for plaintiffs.

John C. Gray, Jr., Brooklyn, N. Y. (Lloyd Constantine, of counsel), Brooklyn Legal Services Corp., Brooklyn, N. Y., B. K. Wade Eaton, Greater Up-State Law Project, Rochester, N. Y., for plaintiff-intervenor.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Edward J. Wagner, Buffalo, N. Y., Borge Varmer, Regional Atty., Region II, and Annette Blum, Asst. Regional Atty., Dept. of Health, Education, and Welfare, Washington, D. C., of counsel), for federal defendant.

Louis J. Lefkowitz, Atty. Gen. of New York (Peter J. Todoro, Buffalo, N. Y., of counsel), for state defendant.

James L. Magavern, Erie County Atty., Buffalo, N. Y. (Robert J. Pierce, Buffalo, N. Y., of counsel), for county defendant Sipprell.

Frank Tedeschi, Schenectady, N. Y., for defendant Staszak.

CURTIN, Chief Judge.

Plaintiffs bring this action to challenge the recoupment provisions of both the federal [45 C.F.R. § 233.-20(a)(12)(i)(A)(2)] and New York State [18 N.Y.C.R.R. § 352.31(d)(2)] statutes under the Aid to Families with Dependent Children Program [AFDC], 42 U.S.C. § 601 et seq. These regulations allow AFDC overpayments, caused by the willful withholding of information by a recipient, to be recouped by deductions from future payments, regardless of whether or not the recipient family has assets available in addition to the current assistance payment. Plaintiffs Carter and Jackson both received notices of recoupment after withholding information on monies received, one from a tax refund and the other from alimony payments. They challenged these recoupments at fair hearings, but the determinations of the Social Service Commissioners were upheld. They do not now question these findings, but argue that the underlying regulations are contrary to the intent of Congress as expressed in the AFDC statute, and contrary to express provisions of the AFDC statute. Additionally, plaintiffs claim constitutional violations, contending that the regulations are so arbitrary and capricious that they are violative of their fifth amendment due process rights, and that they deny plaintiffs the equal protection of the laws and deprive them of property without due process as guaranteed by the fourteenth amendment.[1] Plaintiffs seek declaratory and injunctive relief.

On July 11, 1975 a temporary restraining order was granted without opposition to plaintiffs Jackson and Carter. By order of this court dated November 17, 1975, Maria Bonilla was granted

---

1. Plaintiffs claim a cause of action under 5 U.S.C. §§ 702, 706. § 702 provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 706(2) requires the reviewing court to:

hold unlawful and set aside agency action . . . found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

This allegation is simply a restatement of plaintiffs' other charges.

leave to intervene as a party plaintiff,[2] but her motion for a temporary restraining order was denied.

45 C.F.R. § 233.20(a)(12)(i)(A)(2) provides:

> Where such overpayments were occasioned or caused by the recipient's willful withholding of information concerning his income, resources or other circumstances which may affect the amount of payment, the State may recoup prior overpayments from current assistance grants irrespective of current income or resources.

The New York regulation is very similar.[3]

The two specific provisions of the statute that the plaintiffs contend the regulations contradict are: 42 U.S.C. § 602(a)(10) and 42 U.S.C. § 602(a)(7). § 602(a)(10), the so-called "eligibility" statute, reads:

> A State plan for aid and services to needy families with children must . . . provide . . . that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, *and that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals.* (Emphasis added.)

§ 602(a)(7), sometimes called the "income and resources" rule, reads:

> A State plan for aid and services to needy families with children must . . . provide that the State agency shall, in determining need, take into consideration any other *income and resources* of any child or relative claiming aid to families with dependent

children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income. (Emphasis added.)

All parties submitted comprehensive briefs, and oral argument was heard on November 25, 1975. Before the court at this time are plaintiffs' request for a preliminary injunction and for a convening of a three-judge court, and defendant Weinberger's motion to dismiss the action for lack of jurisdiction.

## I. JURISDICTION

With respect to HEW, plaintiffs assert three separate bases for jurisdiction in this court: (1) 28 U.S.C. § 1331 (federal question jurisdiction, $10,000 requisite amount in controversy); (2) 28 U.S.C. § 1361 (federal mandamus statute); (3) 5 U.S.C. §§ 701–706 (federal Administrative Procedure Act [APA]). In addition, they assert jurisdiction over the state and county defendants through 28 U.S.C. § 1343(3), (4), and 28 U.S.C. § 1331.

Clearly, none of the plaintiffs' individual claims exceeds $10,000. Plaintiffs deny that they have aggregated their damages to reach the $10,000 minimum, however, claiming to proceed under the "trust fund" theory of *Bass v. Rockefeller,* 331 F.Supp. 945 (S.D.N.Y.1971), *vacated as moot,* 464 F.2d 1300 (2d Cir. 1971). This trust fund theory has not yet been accepted in this circuit. *Moore and Vermont Welfare Rights Association v. Betit,* 511 F.2d 1004 (2d Cir. 1975). There is also much doubt as to whether

---

**2.** Plaintiff-Intervenor Bonilla is also subject to a recoupment order for failure to notify the New York City Department of Social Services that her husband had returned to the family from the Army and was employed. As with plaintiffs Jackson and Carter, a fair hearing was held and Mrs. Bonilla does not contest the finding of willful withholding of information.

**3.** 18 N.Y.C.R.R. § 352.31(d)(2) reads:

> Where overpayments were occasioned or caused by a recipient's willful withholding of

information concerning his income, resources, or other circumstances which may have affected the amount of the public assistance payment, recoupment of prior overpayments from current assistance grants shall be made irrespective of current income and resources. In such cases, recoupment shall not be limited to overpayments made during the 12 months preceding the month in which the overpayment was discovered.

the APA suffices as an independent jurisdictional grant. *Mills v. Richardson,* 464 F.2d 995, 1001 n. 9 (2d Cir. 1972); *Aquayo v. Richardson,* 473 F.2d 1090, 1101–1102 (2d Cir. 1973), *cert. denied,* 414 U.S. 1146, [94 S.Ct. 900, 39 L.Ed.2d 101] (1974).

Neither of these two theories need be considered, however, because we believe jurisdiction over defendant Weinberger is proper under the Mandamus Act, which states:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
>
> 28 U.S.C. § 1361.

■ The duties encompassed by the Mandamus Act include both statutory and constitutional duties. *Mattern v. Weinberger,* 377 F.Supp. 906, 914 (E.D. Pa.1974). The Secretary of HEW is required to "make and publish . . . rules and regulations, not inconsistent" with the Social Security Act. 42 U.S.C. § 1302. Plaintiffs allege that the Secretary, by promulgating a regulation that is inconsistent with the Social Security Act, has violated statutory and constitutional duties owed to the plaintiffs. The problem is that to discover the duties involved here requires a construction of the relevant statutes, with the result that the question of § 1361 jurisdiction depends on whether or not the plaintiffs' charges can be substantiated, and the determination of plaintiffs' charges turns on a finding of jurisdiction. One requisite presupposes another. To avoid this degenerating into a catch-22 abyss, we interpret § 1361 to permit an assumption of jurisdiction in these circumstances. *See Mattern v. Weinberger, supra,* at 914 n. 10; *see also Frost v. Weinberger,* 515 F.2d 57, 62 (1975).

HEW argues that *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, [57 S.Ct. 855, 81 L.Ed. 1272] (1937), and *Lovallo v. Froehlke,* 468 F.2d 340 (2d Cir. 1972), stand for the proposition that § 1361 is not an independent grant of jurisdiction. These cases do not support the Government's position. *National Welfare Rights Organization v. Weinberger,* 377 F.Supp. 861, 867, n. 6 (D.D.C.1974).

## II. THE THREE–JUDGE COURT QUESTION

■ Defendant HEW admits that 28 U.S.C. § 2281 requires the convening of a three-judge district court when the constitutionality of a statewide regulation or statute is contested. However, HEW contends that 28 U.S.C. § 2282, which requires a three-judge court when the constitutionality of a federal *statute* is challenged, does not require a three-judge court when only a federal government *regulation* is attacked as being unconstitutional. The Government cites the case of *Sardino v. Federal Reserve Bank,* 361 F.2d 106 (2d Cir. 1966), *cert. denied,* 385 U.S. 898, [87 S.Ct. 203, 17 L.Ed.2d 180] (1966), where the court stated:

> That statute, [28 U.S.C. § 2281] originally enacted in 1910, . . . requiring three-judge courts when a plaintiff sought to restrain the enforcement of any "statute of a state" upon the ground of unconstitutionality, was amended in 1913 to include "an order made by an administrative board or commission acting under and pursuant to the statutes of such State." . . . In adopting § 2282 Congress declined to follow that precedent. Only Acts of Congress were mentioned; orders of federal boards and commissions were not.
>
> 361 F.2d at 114.

As the *Sardino* court pointed out, the Supreme Court has interpreted this omission to be deliberate. *William Jameson & Co. v. Morgenthau,* 307 U.S. 171, [59 S.Ct. 804, 83 L.Ed. 1189] (1939).

■ The Government argues that since the federal regulations control the state regulations, and since the federal regulation and state regulation in this case track one another, a three-judge court is not required since the real issue

is the constitutionality of the federal regulation. The Supreme Court's admonition that the three-judge court statute should be very narrowly construed, in part because it is a severe drain on the federal judiciary, militates in support of the Government's argument. *Phillips v. United States*, 312 U.S. 246, 248–251, [61 S.Ct. 480, 85 L.Ed. 800] (1941). We agree that this case is not appropriate for a three-judge court.

## III. THE PRELIMINARY INJUNCTION QUESTION

■ The test in this circuit for a preliminary injunction, recently examined in *American Brands, Inc. v. Playgirl, Inc.*, 498 F.2d 947 (2d Cir. 1974), is:

> whether or not the moving party has carried the burden of clearly demonstrating a combination of either probable success on the merits and the possibility of irreparable damage, or the existence of serious questions going to the merits and the tipping of the balance of hardships sharply in its favor. 498 F.2d at 949.

This powerful relief is not lightly given: "We repeatedly have emphasized the heavy burden on a party seeking the extraordinary remedy of preliminary injunctive relief." *Pride v. Community Sch. Bd. of Brooklyn, N. Y. Sch. D. # 18*, 482 F.2d 257, 264 (2d Cir. 1973). For the reasons stated below, we decline to grant a preliminary injunction.

■ The recoupment regulations do not affect eligibility for aid, only the amount an otherwise eligible recipient is entitled to receive. The Supreme Court in *Dandridge v. Williams,* 397 U.S. 471, 480–481, [90 S.Ct. 1153, 1159, 25 L.Ed.2d 491] (1970), referring to § 602(a)(10), stated:

> [S]ince the statute leaves the level of benefits within the judgment of the State, this language cannot mean that the "aid" furnished must equal the total of each individual's standard of need in every family group. . . . So long as some aid is provided to all

eligible families and all eligible children, the statute itself is not violated. Thus, the regulation does not contravene 42 U.S.C. § 602(a)(10) which deals only with the question of eligibility. And even if the regulation in question is interpreted as conditioning a recipient's eligibility, we believe that congressional silence signifies approval of this regulation. Recoupment for overpayments caused by deliberate withholding of information regarding income by the recipient has been authorized by federal regulation at least since early 1969. 45 C.F.R. § 233.20(a)(3)(ii)(d), 34 Fed.Reg. 1395 (January 29, 1969). Even before that, as HEW pointed out in its brief, the Handbook of Public Assistance Administration [Handbook] provisions appear to have contemplated that states would recoup overpayments. [Handbook, Part V, § 3340 (March 5, 1951).] Only for a short period in the late 1960's was recoupment prohibited if the unreported income was no longer available. [Handbook, Part IV, § 3120 (April 10, 1967).] Congress has the authority to impose new or different requirements for AFDC recipients. Its silence over a protracted period of time, when HEW regulations allowed recoupments under the circumstances of this case, indicates its approval of the regulations. *Zemel v. Rusk*, 381 U.S. 1, 11, [85 S.Ct. 1271, 14 L.Ed.2d 179] (1965).

■ Plaintiffs contend that the regulation in issue here contravenes the "income and resources" rule, 42 U.S.C. § 602(a)(7), *supra,* because it presumes that the recipient has income available to take the place of the grant reduction. They cite *King v. Smith*, 392 U.S. 309, [88 S.Ct. 2128, 20 L.Ed.2d 1118] (1968), to support their position that only income actually available can be considered when determining the grant to the family. *King* involved the Alabama "substitute father" rule which assumed that if a mother cohabited with a man, that individual would contribute to the children's support. The Court ruled that unless the individual was legally obligat-

ed to support the children, it could not be assumed he did so.

We do not think that *King* controls this case. This regulation does not assume that any non-existent supply of money has been made available to the recipient family. It requires a showing that the family actually received a sum of money and then wrongfully withheld information about it. Although the end result may be that the grant reduction occurs after the overpayment is spent, and hardship will undoubtedly occur, the money was available to the family. *Jacquet v. Bonin,* Civ–1972–2589, at 7–8 (E.D.La. July 21, 1975).

Plaintiffs argue that the fundamental purpose of the AFDC program is to aid the needy children, and that any reduction of assistance punishes the children for the wrongdoing of the parent. This is a strong argument, and it has persuaded some courts. *Bradford v. Juras,* 331 F.Supp. 167 (D.Ore.1971); *Caruthers v. Friend,* Civ–7188 (M.D.Tenn. 1974). However, the *Dandridge* decision allowed the states to set a maximum limit per family which conceivably could have a more drastic effect than the recoupment provision. The Court recognized that the "strong policy of the statute in favor of preserving family units does not prevent a State from sustaining as many families as it can, and providing the largest families somewhat less than their ascertained per capita standard of need." *Dandridge, supra,* [397 U.S.] at 480, [90 S.Ct. at 1159.] The states have finite resources. We cannot say that this regulation, which is designed to avoid wrongful diminution of the state's limited funds and to that extent is beneficial to all recipients, contravenes the fundamental purpose of AFDC.

Although the constitutional challenges that plaintiffs raise are substantial, they do not indicate probable success on the merits. The regulation is clearly not arbitrary or capricious. It is directed solely at overpayments due to wrongful withholding of information by the recipient. Although plaintiffs argue that other methods could be utilized, we find ourselves in agreement with Judge Brieant's analysis of this argument:

> Suing the recipients and recovering civil judgments would likely be expensive and unrewarding. Charging these welfare mothers with crimes might well be socially counter-productive.

*Lomax v. Lavine,* 72 Civ. 2457, at 11 (S.D.N.Y. July 31, 1972).

Neither does the regulation deprive plaintiffs of property without due process or deny the plaintiffs the equal protection of the laws. Plaintiffs were afforded administrative fair hearings and do not contest them in this court. The fourteenth amendment prohibits invidious discrimination, but it does not require that all citizens be treated exactly alike. *Dandridge, supra,* [397 U.S.] at 483–487, [90 S.Ct. 1153.] Further, there is no showing that this regulation does not apply to all recipients. It is a reasonable approach to a problem that faces all government programs of public assistance.

For all the above reasons, the plaintiffs have not demonstrated their probable success on the merits. Again the words of the *Lomax* court are on point:

> On a balancing of the equities, there is a strong public interest against the grant of a preliminary injunction. · · · Such an injunction would encourage perjury, larceny and fraud, a purpose which does not commend itself to a court of equity.

*Lomax, supra,* at 10–11.

Therefore, plaintiffs' motions for the convening of a three-judge court and for a preliminary injunction are denied, and HEW's motion to dismiss for lack of jurisdiction is also denied.

The court defers ruling on plaintiffs' motion to certify this suit as a class action. This motion was not heard at oral argument and defendants' position on it has not yet been presented to the court.

So ordered.