[No. 5316-1.   Division One.   July 3, 1978.]

JACQUELINE T. BURNS, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Slade Gorton, Attorney General,* and *Philip G. Hubbard, Deputy,* for appellant.

*Anthony Lee* and *Kristin M. Houser,* for respondent.

CALLOW, J.—Quaere: Is the recoupment authorized by RCW 74.04.300 and WAC 388-44-035(1)(a) of an extra 25 percent of funds fraudulently received under the Aid to Families with Dependent Children program invalid under the Supremacy Clause as contrary to the Social Security Act? We hold such recoupment is valid.

Between March 1970 and July 1971, Jacqueline T. Burns applied under four different names for public assistance in the form of AFDC (Aid to Families with Dependent Children) and food stamps on behalf of herself and her dependents. Following her conviction on criminal charges, she was assessed administratively for an overpayment and a 25 percent fraud expenses charge. An administrative hearing was granted to her to contest the proposed assessment of overpayment. The hearing resulted in a finding that she had fraudulently received $2,035.15, and she was assessed for overpayment of $2,499.56 which included a 25 percent fraud charge of $464.41. The fraud expenses were assessed pursuant to RCW 74.04.300 and WAC 388–44–035(1)(a), which provide that in cases of fraud the overpayment assessed shall be 125 percent of the amount which the recipient fraudulently received.

On appeal to the Superior Court, Ms. Burns stipulated that she had fraudulently received $2,035.15 in AFDC funds. The sole issue presented on trial was whether the State could seek reimbursement of 125 percent of the amount fraudulently received. The Superior Court held that the recoupment provisions were invalid as a condition of eligibility for public assistance benefits which was unauthorized by federal law.

In *Caiola v. Department of Social & Health Servs.*, 17 Wn. App. 346, 351, 562 P.2d 988 (1977), we upheld the validity of the fraud recoupment provisions of RCW 74.04 stating:

> Petitioner asserts that the State lacks authority to recoup from her any funds other than the actual overpayment made. This assertion is also rejected. RCW 74.04.300 and the department's regulations were consistent with both federal regulations and with *National Welfare Rights Organization v. Weinberger*, 377 F. Supp. 861 (D.D.C. 1974).

State laws implementing federal welfare programs are required to comply with federal legislation. *Anderson v. Morris*, 87 Wn.2d 706, 558 P.2d 155 (1976). The federal

statutes and regulations, however, do not address the permissible and impermissible means of punishing fraud (42 U.S.C. §§ 601–10; 45 C.F.R. 233.20) beyond the allowance of the recouping of overpayments, where the recipient has other income or assets or has received the overpayments fraudulently. 45 C.F.R. 233.20(a)(12). *See National Welfare Rights Organization v. Weinberger,* 377 F. Supp. 861 (D.D.C. 1974). The Washington Administrative Code is consistent in allowing the recoupment of overpayments by means of mandatory future assistance reductions in fraud cases. WAC 388–44–145. The Washington Administrative Code distinguishes between fraudulent and nonfraudulent cases in defining "overpayment," stating as follows:

WAC 388–44–035 Overpayment—Due to Factors Other Than Need. (1) The amount of the overpayment to an individual who is ineligible for reasons other than financial need shall be determined as follows.

(a) If assistance is obtained as a result of a willful act of the recipient to deceive the department, the overpayment shall be 125 per cent of the amount of assistance, including medical care, to which he was not entitled during such period of ineligibility.

(b) If no willful act to deceive is involved the overpayment shall be the amount of assistance, including medical care, to which he was not entitled during the period of ineligibility, provided that such overpayment shall be reduced by the amount of assistance that the recipient would have been eligible to receive during the period of ineligibility from any other category of assistance.

*Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 189, 550 P.2d 529 (1976), commented favorably upon the provision permitting 125 percent recoupment in fraud cases, saying that it was

a remedial measure; it was provided primarily to safeguard state revenues and reimburse the State for the expense of investigation and the loss resulting from the public assistance recipient's fraud. Clearly, the sanction contained in RCW 74.04.300 was meant to be civil rather than criminal in nature.

The Social Security Act provides that "aid to families with dependent children shall be furnished with reasonable promptness to all *eligible individuals . . .*" (Italics ours.) 42 U.S.C. § 602(a)(10). The principle has been established that the states cannot exclude otherwise eligible individuals or families by imposing additional conditions of eligibility not contained in the Social Security Act. *Carleson v. Remillard,* 406 U.S. 598, 32 L. Ed. 2d 352, 92 S. Ct. 1932 (1972); *Townsend v. Swank,* 404 U.S. 282, 30 L. Ed. 2d 448, 92 S. Ct. 502 (1971); *King v. Smith,* 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968). In *Townsend* the court stated the principle as follows:

> [A]t least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.

*Townsend v. Swank, supra* at 286.[1]

The trial judge found the requirement that the fraudulent prior recipient repay the amount of the overpayment plus an additional 25 percent before she would again be eligible to receive the full amount of assistance to which she would otherwise be entitled to constitute an additional condition of eligibility, which is invalid under the Supremacy Clause as contrary to the Social Security Act. We disagree.

*Carleson v. Remillard, supra; Townsend v. Swank, supra;* and *King v. Smith, supra,* all involved the total denial of eligibility of certain individuals. The plaintiff argues that the rationale of those cases applies equally where a state reduces the benefits available. We are further cited to *Doe v. Swank,* 332 F. Supp. 61 (N.D. Ill.), *aff'd,* 404

---

[1]*Burns v. Alcala,* 420 U.S. 575, 580, 43 L. Ed. 2d 469, 95 S. Ct. 1180 (1975), stated the test to be: "*King, Townsend* and *Carleson* establish only that once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional."

U.S. 987, 30 L. Ed. 2d 539, 92 S. Ct. 537 (1971); *Bradford v. Juras,* 331 F. Supp. 167 (D. Ore. 1971); and *Cooper v. Laupheimer,* 316 F. Supp. 264 (E.D. Pa. 1970), but find those cases to be either distinguishable or unpersuasive.[2]

We adopt the reasoning of *Jackson v. Weinberger,* 407 F. Supp. 792, 797 (W.D.N.Y. 1976), which upheld the federal regulations allowing for recoupment in cases of fraudulent overpayment based upon the opinion in *Dandridge v. Williams,* 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970), stating:

> The recoupment regulations do not affect eligibility for aid, only the amount an otherwise eligible recipient is entitled to receive. The Supreme Court in *Dandridge v. Williams,* 397 U.S. 471, 480–481 [90 S. Ct. 1153, 1159, 25 L. Ed. 2d 491] (1970), referring to § 602(a)(10), stated:
>
>> [S]ince the statute leaves the level of benefits within the judgment of the State, this language cannot mean that the "aid" furnished must equal the total of each individual's standard of need in every family group. . . . So long as some aid is provided to all eligible families and all eligible children, the statute itself is not violated.
>
> Thus, the regulation does not contravene 42 U.S.C. § 602(a)(10) which deals only with the question of eligibility. And even if the regulation in question is interpreted as conditioning a recipient's eligibility, we believe that congressional silence signifies approval of this regulation. Recoupment for overpayments caused by deliberate withholding of information regarding income by the recipient has been authorized by federal regulation at least since early 1969. 45 C.F.R. § 233.20(a)(3)(ii)(d), 34 Fed. Reg. 1395 (January 29, 1969). Even before that, as HEW pointed out in its brief, the Handbook of Public Assistance Administration [Handbook] provisions appear

---

[2] In *National Welfare Rights Organization v. Weinberger,* 377 F. Supp. 861 (D.D.C. 1974); *Bradford v. Juras,* 331 F. Supp. 167 (D. Ore. 1971); and *Cooper v. Laupheimer,* 316 F. Supp. 264 (E.D. Pa. 1970), the plaintiffs were assistance recipients whose assistance payments were reduced in order to effect mandatory recoupment of past overpayments to them. These cases are not contrary to the result we reach in this case. In none of these cited cases had there been a due process determination that the overpayments were fraudulently received.

to have contemplated that states would recoup overpayments. [Handbook, Part V, § 3340 (March 5, 1951).] Only for a short period in the late 1960's was recoupment prohibited if the unreported income was no longer available. [Handbook, Part IV, § 3120 (April 10, 1967).] Congress has the authority to impose new or different requirements for AFDC recipients. Its silence over a protracted period of time, when HEW regulations allowed recoupments under the circumstances of this case, indicates its approval of the regulations. *Zemel v. Rusk,* 381 U.S. 1, 11 [85 S. Ct. 1271, 14 L. Ed. 2d 179] (1965).

We find the long period during which the federal regulation which specifically allows a harsher method of dealing with fraud cases has existed to be indicative of an intention to treat these fraud cases differently from other overpayment situations. *Accord, Howell v. Trainor,* 432 F. Supp. 1235 (N.D. Ill. 1977).

The plaintiff further contends that RCW 74.04.300 and WAC 388–44–035(1)(a) contravene the "income and resources" rule, 42 U.S.C. § 602(a)(7),[3] because they presume that the recipient has income or resources available to make up for the grant reduction. We are cited to *King v. Smith, supra,* as indicating that only income actually available can be considered when determining the grant to the family. We agree with *Jackson v. Weinberger, supra* at 797–98, which said:

> *King* involved the Alabama "substitute father" rule which assumed that if a mother cohabited with a man, that individual would contribute to the children's support. The Court ruled that unless the individual was legally obligated to support the children, it could not be assumed he did so.
>
> We do not think that *King* controls this case. This regulation does not assume that any non–existent supply

---

[3]42 U.S.C. § 602(a):

"A State plan for aid and services to needy families with children must . . . (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . . as well as any expenses reasonably attributable to the earning of any such income; . . ."

of money has been made available to the recipient family. It requires a showing that the family actually received a sum of money and then wrongfully withheld information about it. Although the end result may be that the grant reduction occurs after the overpayment is spent, and hardship will undoubtedly occur, the money was available to the family. *Jacquet v. Bonin,* Civ–1972–2589, at 7–8 (E.D.La. July 21, 1975).

The states may legitimately set their assistance grants at levels below the amounts determined to be the actual needs of the recipients in allocating their limited resources. As noted in *Dandridge v. Williams, supra* at 478–80:

> In *King v. Smith* [392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968)] we stressed the States' "undisputed power," under these provisions of the Social Security Act, "to set the level of benefits and the standard of need." *Id.,* at 334. We described the AFDC enterprise as "a scheme of cooperative federalism," *id.,* at 316, and noted carefully that "[t]here is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." *Id.,* at 318–319.
>
> . . .
>
> . . . Given Maryland's finite resources, its choice is either to support some families adequately and others less adequately, or not to give sufficient support to any family. We see nothing in the federal statute that forbids a State to balance the stresses that uniform insufficiency of payments would impose on all families against the greater ability of large families—because of the inherent economies of scale—to accommodate their needs to diminished per capita payments. The strong policy of the statute in favor of preserving family units does not prevent a State from sustaining as many families as it can, and providing the largest families somewhat less than their ascertained per capita standard of need.

The recovery by recoupment of the amount fraudulently obtained alone will not serve to deter fraud by AFDC recipients. Rather, the State is entitled to recover its loss,

the cost of making itself whole, and to impose a civil penalty upon the dishonest wrongdoer. It is no answer to suggest that criminal sanctions are preferable in punishing the mother without punishing the child, as the child will be equally hurt if its mother is incarcerated. Further, courts are often loath to impose such punishment because such a course adds additional cost to the State, while causing hardship to the innocent members of the family. The legislative approach wisely takes these factors into consideration.

The judgment is reversed and the decision of the Department of Social and Health Services reinstated.

FARRIS, C.J., and WILLIAMS, J., concur.