[No. 45275. En Banc. January 10, 1980.]

MAVIS BERRY, ET AL, *Respondents,* v. MILTON BURDMAN, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for appellants.

*Tony Lee* of *Evergreen Legal Services,* for respondents.

WRIGHT, J.—This is a class action, the certified class being:

> [a]ll former, present and future AFDC recipients in the State of Washington whose public assistance benefits have been, are being, or may be reduced and who have been, are being or may be required to have the remaining portion of the family's AFDC grant paid to a protective payee, because of their failure to turn over support payments to the Office of Support Enforcement, Department of Social and Health Services, including those recipients who have or may sign agreements promising to repay to the Office of Support Enforcement the amount of support retained, in order to avoid reduction of their grant or set aside payment to a protective payee.

Summary judgment was granted to plaintiff class against the Department of Social and Health Services (DSHS) and the Office of Support Enforcement (OSE). The matter came directly to this court.

Plaintiffs–respondents contend on behalf of the class that certain DSHS rules violate the Aid for Families with Dependent Children (AFDC) provisions of the Social Security Act (42 U.S.C.A § 601 *et seq.* (1977)) and rules of the Department of Health, Education and Welfare (HEW) included in 45 C.F.R. § 232.12 (1977).

The relevant part of the Social Security Act is 42 U.S.C.A. § 602(a) (1977), which reads in part:

(a) A State plan for aid and services to needy families with children must . . . (26) provide that, *as a condition of eligibility* for aid, *each applicant or recipient will be required—*

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed,

(B) *to cooperate with the State* (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) *in obtaining support payments for such applicant* and for a child with respect to whom such aid is claimed . . . and that, if the relative with whom a child is living is found to be ineligible because of failure to comply with the requirements of subparagraphs (A) and (B) of this paragraph, any aid for which such child is eligible will be provided in the form of protective payments as described in section 406(b)(2) . . .

(Italics ours.)

Implementing this statute, the HEW secretary promulgated 45 C.F.R. § 232.12 (1977) which read in part:

The State plan must provide that:

(a) *As a condition of eligibility* for assistance, *each* applicant for or *recipient* of AFDC *will be required to cooperate* with the State *in:*

(1) Identifying and locating the parent of a child with respect to whom aid is claimed;

(2) Establishing the paternity of a child born out of wedlock with respect to whom aid is claimed;

(3) *Obtaining support payments* for such applicant or recipient and for a child with respect to whom aid is claimed; and

(4) Obtaining any other payments or property due such applicant or recipient of such child.

(b) *"Cooperate" includes* the following:
. . .

(4) After an assignment under § 232.11 has been made, *paying to the child support agency any child support*

*payments received from the absent parent* which are covered by such assignment.

(c) If the child support agency notifies the State or local agency of evidence of failure to cooperate, the State or local agency shall act upon such information in order to enforce the eligibility requirements of this section.

(d) If the relative with whom a child is living fails to comply with the requirements of paragraph (a) of this section, such relative shall be denied eligibility without regard to other eligibility factors.

(e) If the relative with whom a child is living is found to be ineligible for assistance because of failure to comply with the requirements of paragraph (a) of this section, any aid for which such child is eligible (determined without regard to the needs of the caretaker relative) will be provided in the form of protective payments as described in § 234.60 of this chapter.

(Italics ours.)

Pursuant to these federal provisions, DSHS also promulgated rules. The provisions involved here are contained in WAC 388–14–200, which reads in part:

This section establishes the initial and continuing requirements which affect eligibility for aid to families with dependent children.

(1) Beginning August 1, 1975, as a condition of eligibility for assistance, each applicant/recipient shall make assignment to the office of support enforcement of any and all right, title, and interest in any support obligation the applicant/recipient may have in his or her own behalf or in behalf of any other family member for whom the applicant/recipient is applying for or receiving financial assistance including rights to support which have accrued at the time such assignment is executed.

. . .

(2) When (1), above is satisfied, *cooperation is further required as a continuing condition of eligibility* for assistance. *Cooperation includes* identifying and locating absent parents including possible putative fathers, and in establishing paternity of a child or children, and/or in *obtaining support payments* or any other payments or property due the applicant/recipient or child(ren) as further provided below:

. . .

(d) *Cooperation in the obtaining of support payments further includes but is not limited to*:

(i) Providing of specific information at the time of application to establish the amount of the support debt accrued to the applicant/recipient prior to application for assistance.

(ii) *Immediate remittance of all support payments received by the applicant/recipient from any person or agency to the office of support enforcement.*

(3) If the applicant/recipient fails to cooperate as defined above the caretaker/relative shall be ineligible to receive assistance and any assistance for which the children may be eligible shall be provided by protective payment as specified in WAC 388–33–453; the determination of requirements for the child(ren) shall be computed without regard to the requirements of the caretaker/relative.

(4) *If support monies are not promptly remitted and protective payments have been established* without regard to the requirements of the caretaker/relative pursuant to WAC 388–33–453, *the office of support enforcement may enter into a written agreement with the caretaker/relative for satisfaction of the obligation of remittance of support payments by monthly installment payments to the office of support enforcement in amounts not less than ten percent of the original amount not remitted. If a caretaker/relative makes such an agreement for satisfaction and is restored to grant status and fails to make the required monthly payments or again fails to promptly remit support monies received direct, said recipient is subject to WAC 388–33–453 and thereafter may establish cooperation under this subsection only by remittance to the office of support enforcement of the full amount of support monies received.*

(Italics ours.)

In question are WAC 388–14–200(2)(d) and 388–14–200(3), which we hold to be valid, and WAC 388–14–200(4), which we hold to be invalid.

The Social Security Act makes cooperation a condition of AFDC eligibility. The act requires assignment of support money received from an absent parent and the HEW regulations extend this requirement to include paying that support money to the proper state agency—in this state, OSE.

WAC 388–14–200(2)(d) and (3) are consistent with these requirements. It should be noted the present DSHS regulations as amended require remittance of support payments to OSE within 8 days rather than immediately.

██ WAC 388–14–200(4), however, presents a problem because it establishes new requirements for eligibility. The new requirements include entering into a written agreement to provide *inter alia* for repayment in monthly installment payments of not less than 10 percent of the original amount not remitted. In case of any default in the making of these payments or in remitting support money thereafter, the whole amount must be paid in full. Such requirements are not imposed or authorized in either the Social Security Act or the HEW regulations.

In *Burns v. Department of Social & Health Servs.,* 20 Wn. App. 585, 581 P.2d 1069 (1978) the Court of Appeals said:

> The Social Security Act provides that "aid to families with dependent children shall be furnished with reasonable promptness to all *eligible individuals . . .*" (Italics ours.) 42 U.S.C. § 602(a)(10). The principle has been established that the states cannot exclude otherwise eligible individuals or families by imposing additional conditions of eligibility not contained in the Social Security Act. *Carleson v. Remillard,* 406 U.S. 598, 32 L. Ed. 2d 352, 92 S. Ct. 1932 (1972); *Townend v. Swank,* 404 U.S. 282, 30 L. Ed. 2d 448, 92 S. Ct. 502 (1971); *King v. Smith,* 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968). In *Townsend* the court stated the principle as follows:
>
> > [A]t least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.
>
> *Townsend v. Swank, supra* at 286.

(Footnote omitted.) *Burns,* at 588. In *Burns v. Alcala,* 420 U.S. 575, 43 L. Ed. 2d 469, 95 S. Ct. 1180 (1975), the

United States Supreme Court stated: " *King, Townsend* and *Carleson* establish only that once the federal standard of eligibility is defined, a participating State may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional." *Burns v. Alcala, supra* at 580.

Here the clear indication is to the contrary. Congress has stated in the Social Security Act the AFDC program objectives:

[f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services . . . to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self–support and personal independence consistent with the maintenance of continuing parental care and protection . . .

42 U.S.C.A. § 601 (1977).

It is apparent that the harsh provision of the DSHS rules requiring immediate repayment of the full amount in certain instances most often makes it impossible for the recipient to regain eligibility. It is hard to understand how a department charged with service to people could promulgate such a cruel regulation. The rule is tantamount to an adhesion contract in its most oppressive form.

True, any provision for recovery of sums from public assistance recipients presents difficulties. These human beings generally receive only the bare minimum necessary for a reasonable existence. To take any part of that minimum away for repayment of any amount due the state results in hardship. This provision for repayment in full, however, exceeds the hardship of other repayment schemes and surpasses all bounds of reason.

We hold that WAC 388–14–200(4) is void because it conflicts with the Social Security Act and the HEW regulations. Having reached this conclusion we do not need to

discuss plaintiffs' other contentions and affirm the trial court.

We also affirm the trial court's decision to allow attorneys' fees to respondents in the sum of $6,500. These are called for under RCW 74.08.080 and several cases decided by this court, including *Tofte v. Department of Social & Health Servs.*, 85 Wn.2d 161, 531 P.2d 808 (1975). In that case we said:

> We conclude that the fundamental underpinning of the fee award provision is a policy at once punitive and deterrent—a corrective policy which would discipline respondent for violations of Title 74 RCW or of its own regulations, by shifting to the respondent the costs of righting its mistakes. Appellant cites 14 cases brought by SCLS [Spokane County Legal Services] in superior courts in 1974, all appeals of respondent's welfare decisions. In all but one, SCLS was successful in obtaining a court reversal of the decision of respondent, but seldom, it seems, was awarded the statutory attorney fees. At present, it is contended, the private bar shuns welfare cases, leaving them to SCLS; the respondent thus has rarely been assessed fees where incautious, careless, or wrongful actions by its employees have improperly denied benefits and required correction by an appellate court. Clearly an incentive to more careful scrutiny is not out of place. Respondent admits that "a decision for the appellant would give the Department added cause to evaluate each case with more scrutiny."

*Tofte*, at 165. *See also Whitehead v. Department of Social & Health Servs.*, 92 Wn.2d 265, 595 P.2d 926 (1979).

We affirm the trial court and remand only for the purpose of fixing fees for respondents' counsel on this appeal.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied May 14, 1980.