[No. 49249-2.   En Banc.   September 29, 1983.]

THE STATE OF WASHINGTON, *Petitioner,* v. TERRE MARIE FARMER, *Respondent.*

C. J. *Rabideau, Prosecuting Attorney,* and *Pamela Cameron, Deputy,* for petitioner.

*Katherine M. Steele,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Allen T. Miller, Jr., Assistant,* amici curiae.

DIMMICK, J.—We answer in the affirmative the following issue certified to us by the Court of Appeals:

> Whether food stamps are "public assistance" for the purpose of charging a defendant with unlawfully obtaining assistance pursuant to RCW 74.08.331 and RCW 9A.56.030.

The facts are undisputed. Farmer applied for and received welfare benefits consisting of payments under the state assistance program for Aid to Families with Dependent Children (AFDC) and food stamp allotments. Thereafter Farmer accepted temporary employment. She did not report the income she received from this job although she was aware of her responsibility to do so.

The State charged Farmer with fraudulently obtaining public assistance under RCW 74.08.331. The Department of Social and Health Services computed the overpayment of benefits to be $1,545.34, consisting of $987.34 in AFDC benefits and $558 in food stamp allotments. Because the total amount of overpayment exceeded $1,500, Farmer was charged with theft in the first degree, a class B felony.

RCW 9A.56.030; *State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980). Farmer was also charged with perjury under RCW 74.08.055.

Farmer moved to dismiss the theft charge, arguing that RCW 74.08.331 represented an unconstitutional delegation of legislative authority to define a crime, and that the statute was unconstitutionally vague. The trial court denied this motion and Farmer does not appeal that ruling. Farmer subsequently moved to have the amount of money attributable to food stamps stricken from the total amount of overpayment relied upon for the criminal charge. The court sustained this motion, finding that food stamps are not public assistance for the purposes of RCW 74.08.331. This reduced the total amount of overpayment to $987.34, below the amount necessary for theft in the first degree. The court ruled that the prosecutor could proceed to trial if the information was amended to charge Farmer with second degree theft, a class C felony. RCW 9A.56.040. The State sought discretionary review of this ruling, which was granted by the Court of Appeals. The case was then certified to us.

The governing statute, RCW 74.08.331, provides in pertinent part as follows:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for *assistance, including* medical care, surplus commodities and *food stamps,* as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to *obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled* shall be guilty of [theft].

(Italics ours.)

■ Farmer contends this statute is ambiguous as to whether food stamps are "public assistance". Although the statute could have been more precisely written, it is not ambiguous in this regard. Food stamps are clearly included in the definition of "assistance". Respondent, however, perceives a distinction between "assistance" as used in the first part of the statute and "public assistance" as used in the second part of the statute. The statutory scheme does not support this distinction. RCW Title 74 is entitled "Public Assistance" and includes sections relating to the food stamp program. RCW 74.04.500–.527. The definitional section of RCW Title 74 uses "public assistance" and "assistance" in the alternative, making no distinction between the two. RCW 74.04.005(1).

Further, RCW 74.04.005(1) includes within the definition of "public assistance" "federal–aid assistance" which in turn includes the food stamp program. Federal–aid assistance is defined as:

> The specific categories of assistance for which provision is made in any federal law existing or hereafter passed by which payments are made from the federal government to the state in aid or in respect to payment by the state for public assistance rendered to any category of needy persons for which provision for federal funds or aid may from time to time be made, or a federally administered needs–based program.

RCW 74.04.005(5). A brief overview of the statutes and policies underlying the food stamp program makes it readily apparent that the food stamp program is within this definition of federal–aid assistance.

Congress enacted the food stamp program as a welfare program

> to safeguard the health and well–being of the Nation's population by raising levels of nutrition among low–income households. Congress finds that the limited food purchasing power of low–income households contributes to hunger and malnutrition among members of such households. . . . To alleviate such hunger and malnutrition, a food stamp program is herein authorized which

will permit low–income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

7 U.S.C. § 2011 (Supp. 4, 1980). Pursuant to this policy, Congress established the food stamp program in section 2013(a).

Subject to the availability of funds appropriated under section 2027 of this title, the Secretary is authorized to formulate and administer a food stamp program under which, at the request of the State agency, eligible households within the State shall be provided an opportunity to obtain a more nutritious diet through the issuance to them of an allotment.

7 U.S.C. § 2013(a) (Supp. 4, 1980).

Section 2014 illustrates that the food stamp program is a needs–based assistance system.

Participation in the food stamp program shall be limited to those households whose incomes and other financial resources, . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet. Assistance under this program shall be furnished to all eligible households who make application for such participation.

7 U.S.C. § 2014(a) (Supp. 4, 1980).

The food stamp program is a cooperative endeavor between federal and state governments to alleviate hunger and malnutrition among low–income households. The food stamp program is clearly a federal–aid assistance program which is administered by the State. Respondent urges that this is not so because the federal government makes no direct monetary payments to the state. As noted, the federal government does provide the state with the entire value of the food stamp coupons, the equivalent of money payments. Thus, respondent's argument is without merit.

The Department of Social and Health Services, the agency responsible for administering the food stamp program in this state (RCW 74.04.500 and .510), considers the program to be a public assistance program. The state regu-

lations dealing with all public assistance programs include WAC 388-54 entitled "Food Assistance Programs." Further, WAC 388-54-605(3) provides that disclosure of information obtained shall be "restricted to persons directly connected with the administration . . . of the Food Stamp Act or regulations, . . . or with *other* Federal or federally aided, means–tested assistance programs". (Italics ours.)

This court and the Court of Appeals have consistently considered food stamps to be a type of public assistance. The court in *Department of Social & Health Servs. v. Gerlack,* 25 Wn. App. 541, 546, 612 P.2d 382 (1980) cited the definition of public assistance in RCW 74.04.005(1) and held "This broad definition includes food stamps". We have upheld a conviction under RCW 74.08.331 for obtaining food stamps by fraud. *State v. Jeske,* 87 Wn.2d 760, 558 P.2d 162 (1976). *See also State v. Sass, supra. Bazan v. Department of Social & Health Servs.,* 26 Wn. App. 16, 612 P.2d 413 (1980); *Barnes v. Thomas,* 25 Wn. App. 515, 610 P.2d 922 (1980), *aff'd,* 96 Wn.2d 316, 635 P.2d 135 (1981); *Burns v. Department of Social & Health Servs.,* 20 Wn. App. 585, 581 P.2d 1069 (1978). Federal courts also unquestioningly view food stamps as a genre of public assistance. *See, e.g., United States v. Barrington,* 662 F.2d 1046 (4th Cir. 1981); *Willis v. Lascaris,* 499 F. Supp. 749 (N.D.N.Y. 1980); *Bizjak v. Blum,* 490 F. Supp. 1297 (N.D.N.Y. 1980).

Farmer cites *Siemens v. Bergland,* 591 F.2d 1263 (9th Cir. 1978) as support for her conclusion that "public assistance" does not include food stamps. A close reading of that case, however, belies this conclusion. The *Siemens* court rejected the common definition of "public assistance", a definition which included food stamps. The court was constrained to reject that definition and hold that food stamps were not public assistance as defined in a federal regulation promulgated under the Comprehensive Employment and Training Act (CETA) statute. That regulation limited the definition of "public assistance" to payments made under the AFDC and Supplemental Security Income for the Aged,

Blind and Disabled statutes. 591 F.2d at 1264. Our statute does not narrowly restrict the definition of "public assistance" as does the CETA statute. Rather, our statutory scheme specifically includes food stamps and thus reflects the common understanding of public assistance.

In sum, RCW 74.08.331 was adopted in 1979 and this is the first case since that time to question whether food stamps are "public assistance." A reason for this lack of inquiry is undoubtedly due to the fact that the obvious needs no explanation. Since food stamps are unambiguously included within the purview of RCW 74.08.331, we reverse the trial court.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, and DORE, JJ., concur.

ROSELLINI, J. (dissenting)—The majority uses a poorly drafted, ambiguous statute to subject a young mother to a maximum sentence of 10 years in prison. Because I believe the result reached by the majority is prohibited by the rule of lenity, I dissent.

The sole issue in this case is whether the State will be allowed to rely on amounts attributable to food stamps to establish a class B felony under the welfare fraud statute, RCW 74.08.331. That statute, quoted on page 336 of the majority opinion, due to its confusing and ambiguous structure, has been the subject of several cases in this court.

Any analysis of this statute must start with the words contained therein. The majority asserts the statute is unambiguous. It is not.

The present statutory provision has a distinct structural flaw which creates the ambiguity. The first portion of the sentence refers to circumstances affecting eligibility for assistance and then includes food stamps as a factor which affects eligibility for assistance. In the second half of the sentence, the statute makes obtaining public assistance to which one is not entitled a crime. The word "public" is an adjective which modifies, and presumably restricts, the

term assistance. To equate public assistance with assistance would be to ignore the word "public" in violation of basic rules of statutory construction. "'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.'" 2A C. Sands, *Statutory Construction* § 46.06 (4th ed. 1973). Thus, the majority's reliance upon the inclusion of food stamps in the definition of assistance does not resolve the issue of whether food stamps are public assistance and therefore subject to criminal sanctions.

Since RCW 74.08.331 is not plain on its face, one must then decide whether the term public assistance is elsewhere clearly defined so as to remove the ambiguity discussed above. The majority relies on the definition of public assistance contained in RCW 74.04.005(1). That definition states:

> For the purposes of this title, unless the context indicates otherwise, the following definition shall apply:
> (1) "Public assistance" or "assistance"—Public aid to persons in need thereof for any cause, including services, medical care, assistance grants, disbursing orders, work relief, general assistance and federal–aid assistance.

The majority concludes that food stamps are within this definition because they are "federal–aid assistance". This argument does not resolve the issue, however, since it is not clear that food stamps are federal–aid assistance. RCW 74.04.005(5), which defines federal–aid assistance, does not specifically include food stamps within its definition.

The problem of interpreting the statute is further complicated by its structure. The majority charitably concludes that it "could have been more precisely written". Majority opinion, at 337. That statement is much too generous. The sentence, relied upon by the majority as "clearly" including food stamps, has 161 words in it with 17 commas, 2 "ands" and 16 "ors".

Given the structural inadequacies of the statute and its lack of clarity, I believe the rule of lenity requires that we interpret this statute against the State. This rule of lenity

has been recognized by our court and the United States Supreme Court. In *Albernaz v. United States,* 450 U.S. 333, 342, 67 L. Ed. 2d 275, 101 S. Ct. 1137 (1981), it was described as follows:

> Last Term in *Bifulco* v. *United States,* 447 U. S. 381 (1980), we recognized that the rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. Quoting *Ladner* v. *United States,* 358 U. S. 169, 178 (1958), we stated: " 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' " 447 U. S., at 387. We emphasized that the "touchstone" of the rule of lenity "is statutory ambiguity."

Our court recently recognized and applied the lenity principle in the case of *State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980). There, the issue was what effect the passage of the new criminal code, RCW Title 9A, had upon the penalty provision of RCW 74.08.331. Originally, the statute provided a person who committed welfare fraud was guilty of grand larceny and subject to a possible prison term of 15 years. The new criminal code abolished the concept of grand larceny and substituted instead a classification system for theft crimes. The State argued that the statute should be applied so that grand larceny became the equivalent of theft in the first degree regardless of the amount involved. We rejected that argument, noting that the rule of lenity provides "that the court should not interpret a criminal statute so as to increase the penalty imposed absent clear evidence of legislative intent to do so." *Sass,* at 726.

Here, the State seeks to increase respondent's possible penalty by including the food stamp overpayment in the total amount of her overpayment. Although civil recoupment of this overpayment may be appropriate, the rule of lenity will not allow the increased penalties here sought by

the State. Application of the rule thus requires that we find food stamps are not public assistance.

My conclusion places no onerous burden on either legislators, prosecutors or the public. If the Legislature believes food stamp fraud is an appropriate area for criminal sanctions, it may draft a statute to that effect. We cannot do it for them by curing their omission with a strained reading of a poorly written statute. As we noted in *State v. Martin,* 94 Wn.2d 1, 8, 614 P.2d 164 (1980), "we do not have the power to read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent omission."

In conclusion, because I believe the statute is ambiguous, I would strike the portion of overpayment attributable to food stamps.

UTTER, DOLLIVER, and PEARSON, JJ., concur with ROSELLINI, J.